## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SMART GLOVE HOLDING, SDN. BHD**<br>**and SMART GLOVE CORPORATION,**<br>**SDN. BHD,** | ) <br> ) <br> ) <br> ) | |
| **Counterclaimants,** | ) <br> ) | |
| **v.** | ) <br> ) | **CASE NO.: 1:08-cv-00797-RMC** |
| **TILLOTSON CORPORATION,** | ) <br> ) | |
| **Counterclaim Defendant.** | ) <br> ) | |

_____

### TILLOTSON CORPORATION'S MOTION TO DISMISS

Counterclaim Defendant Tillotson Corporation ("Tillotson") hereby moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the counterclaim filed by Counterclaimants Smart Glove Holdings, SDN. BHD and Smart Glove Corporation SDN. BHD (collectively, "Smart Gloves") on the ground Smart Glove's Counterclaim is statutory barred as untimely pursuant to 19 U.S.C. § 1337(c) and C.F.R. § 210.14.  Tillotson also hereby moves, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406, to dismiss the Counterclaim because venue is improper.  In the event the Court denies Tillotson's Motion to Dismiss, Tillotson hereby moves, pursuant to 28 U.S.C. § 1404(a), to transfer the case to the Northern District of Georgia.

This Motion is based on the following:

1.     All pleadings that have been filed in this action; and

2.     The accompanying Brief in Support of Tillotson Corporation's Motion to Dismiss

A proposed Order is attached pursuant to Local Rule 7(c).

WHEREFORE, Tillotson respectfully requests that the Court grant this Motion to

Dismiss or in the alternative transfer the case to the Northern District of Georgia.

Dated: May 27, 2008.

Respectfully submitted,

/s   Brian Meiners
Brian Meiners
Washington D.C. Bar No. 482039

KING & SPALDING LLP

1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-2706
(202) 737-0500 (telephone)
(202) 626-3737 (facsimile)

Attorney for Tillotson Corporation

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SMART GLOVE HOLDING, SDN. BHD )
and SMART GLOVE CORPORATION, )
SDN. BHD, )
        )
       **Counterclaimants,** )
        )
       **v.** )       **CASE NO.: 1:08-cv-00797-RMC**
        )
TILLOTSON CORPORATION, )
        )
       **Counterclaim Defendant.** )
—————————————————————— )

**TILLOTSON CORPORATION'S BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

Smart Glove's[1] Counterclaim is untimely. Under the International Trade Commission ("ITC") regulations governing Smart Glove's removal of this Counterclaim to this Court, Smart Glove was obligated to file its Counterclaim in the ITC no later than ten business days before the commencement of the related ITC evidentiary hearing, and to remove it to this Court immediately. Smart Glove instead waited until May 7, 2008 to file this Counterclaim -- only eight business days before the ITC was scheduled to, and did, commence its evidentiary hearing. Because Smart Glove filed this Counterclaim too late, the Court should dismiss it as untimely filed.

Smart Glove's Counterclaim also fails to allege facts sufficient to establish that a "substantial part" of the events or omissions giving rise to its claims occurred in the District of Columbia. Therefore, the Court should dismiss Smart Glove's claims. See 28 U.S.C. § 1406. In the alternative, the Court should transfer this case to the Northern District of Georgia. Transfer

---

[1] Tillotson refers here to Counterclaimants collectively as "Smart Gloves."

there, rather than litigation here, best serves the interest of justice because a substantial part of

the events alleged in Smart Glove's Counterclaim occurred, if anywhere, in the Northern District

of Georgia.  See 28 U.S.C. § 1404(a).

## FACTUAL RECORD AND PROCEDURAL BACKGROUND

Tillotson owns United States Patent RE 35,616 (filed Nov. 13, 1995) (published Sept. 30,

1997) ("the '616 patent"), titled "Elastomeric Covering Material and Hand Glove Made

Therewith."  See Counterclaim, ¶¶ 8-9 [D.E. # 1].   On May 30, 2007, Tillotson filed a

Section 337 Complaint[2] with the ITC, requesting that it investigate the unlawful sale and

importation into the United States of certain nitrile gloves that utilize the invention claimed in

Tillotson's '616 patent.  See In the Matter of Certain Nitrile Gloves, U.S. Int'l Trade Comm'n,

Inv. No. 337-TA-608, 72 Fed. Reg. 37,052 (July 6, 2007).  On August 16, 2007, the ITC

instituted Investigation Number 337-TA-612, which also involves Tillotson's patented nitrile

gloves.  See In the Matter of Certain Nitrile Rubber Gloves, U.S. Int'l Trade Comm'n, Inv. No.

337-TA-608, 72 Fed. Reg. 47,072 (Aug. 22, 2007).

On September 6, 2007, Tillotson moved to amend its original complaint to include

several additional respondents, including Smart Gloves.  See Counterclaim, ¶ 11; see also Order

21, In the Matter of Certain Nitrile Gloves, U.S. Int'l Trade Comm'n, Inv. No. 337-TA-608.[3]

The ITC granted that motion on September 20, 2007.  See 72 Fed. Reg. 58,884 (Oct. 17, 2007).

---

[2] 19 U.S.C. § 1337 and 19 C.F.R. § 210.12 authorize complaints to be filed with the ITC for
investigations into unfair practices in import trade.

[3] On September 19, 2007, the ITC consolidated Investigation Number 337-TA-608 with
Investigation Number 337-TA-612.  See Order 19, In the Matter of Certain Nitrile Gloves, U.S.
Int'l Trade Comm'n, Inv. No. 337-TA-608, 72 Fed. Reg. 58,884 (October 17, 2007).

Smart Glove filed its Counterclaim with the ITC on May 7, 2008, and a day later removed the Counterclaim to this Court.[4]  See Notice of Removal (filed May 8, 2008), ¶¶ 1-2 [D.E. # 1]. The ITC evidentiary hearing began as scheduled on May 19, eight business days after Smart Glove filed its Counterclaim.  See Order 28, In the Matter of Certain Nitrile Gloves, U.S. Int'l Trade Comm'n, Inv. Nos. 337-TA-608, -612 at 6 ("Order 28") (Exh. A).[5]

In addition, this is not the first suit between these parties involving the '616 patent.  The issues raised by Smart Glove in this suit directly relate to litigation between the parties already pending in Northern District of Georgia (the "Georgia Litigation").  Tillotson Corp. v. Supermax Corp. Bhd. et al., Civ. A. No. 4:07-cv-00193 (N.D. Ga.).  Filed on September 27, 2007, the Georgia Litigation involves the alleged infringement of the '616 patent by certain gloves manufacturers, including Smart Gloves.  See Complaint in the Georgia Litigation (Exh. B), ¶¶ 1, 171-172, 207, 210-216.  The Georgia Litigation thus involves the same issues as this Counterclaim: the infringement and validity of the '616 patent.  See id.  If this case goes forward, Smart Gloves and Tillotson will be litigating the same issues involving the same patent in two fora -- the Northern District of Georgia and the District of Columbia.

---

[4]  Smart Glove's Counterclaim seeks damages and other relief from Tillotson's alleged "unfair competition" and "tortious interference with contract and/or prospective economic advantage." See Counterclaim, ¶¶ 16-24.  The specific allegations set forth in the Counterclaim relate to Tillotson's actions regarding the validity, infringement, and enforceability of the '616 patent, which is the subject of the ITC evidentiary hearing.  Id., ¶¶ 8-14.

[5]  This Court may consider "documents attached … or incorporated" into the Counterclaim, or "matters of which [the Court] may take judicial notice" without converting Tillotson's motion into one for summary judgment.  See Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (affirming dismissal under R. 12(b)(6)).  "Public record information" from other legal proceedings 'may properly be considered on a motion to dismiss."  Jankovic v. Int'l Crisis Group, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (affirming dismissal); see also Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1222-23 (D.C. Cir. 1993) (affirming dismissal in part based on "matters of public record").

**ARGUMENT**

**I.    The Counterclaim is Untimely.**

The Court should dismiss Smart Glove's Counterclaim under Federal Rule of Civil

Procedure 12(b) because Smart Glove failed to file its Counterclaim by the ITC's prescribed

deadline.  See 19 U.S.C. § 1337(c); 19 C.F.R. § 210.14.

A.    Congress Has Invested the ITC with the Authority to Determine the Procedure
For Removing Counterclaims from ITC Investigations.

In 1994, Congress vested the ITC with the authority to enact regulations governing the

procedure for asserting counterclaims arising from an ITC investigation "in a manner prescribed

by the Commission."  See Uruguay Round Agreements Act, Pub. L. No. 103-465, § 321(a)(2),

108 Stat. 4809 (1994) ("Uruguay Agreements").[6]  Exercising that authority, the ITC enacted a

bright-line deadline that requires counterclaims to be filed no "*later than ten business days*

*before the commencement of the evidentiary hearing*."  19 C.F.R. § 210.14(e) (emphasis

supplied).  A counterclaimant filing in the ITC is required to "immediately" remove the

counterclaim to a U.S. District Court because the ITC has no jurisdiction over counterclaims.

See 19 U.S.C. § 1337(c); 28 U.S.C. § 1368; S. REP. 103-412, at 118-120 (1994).[7]  Instead, the

---

[6]  The counterclaim provision was added to section 337 of the Tariff Act of 1930, as part
of the legislation implementing the General Agreement of Tariffs and Trade (GATT). Id. The
same legislation conferred subject matter jurisdiction to adjudicate compulsory counterclaims
filed in ITC investigations upon district courts.  Id at § 321(b)(3)(a), codified as 28 U.S.C. §
1368.

[7] Before the Uruguay Round Amendments, defendants in an ITC investigation into
imported goods did not have a way to assert compulsory counterclaims.  See S. REP. 103-412, at
118-120 (1994).  The inability of such defendants to raise compulsory counterclaims led to a
finding by a GATT panel that the ITC statute violated certain international treaty obligations,
which required Congress to enact legislation that provided a mechanism to raise counterclaims in
an ITC investigation.  Id.

district courts have original jurisdiction counterclaims filed with the ITC under section 337(c) of the Tariff Act of 1930.  See 28 U.S.C. § 1368.

The 10-business-day deadline represents the ITC's determination of how best to balance the ITC defendant's need for adequate time to identify potential counterclaims against the "distraction" and "delay" to ITC claimants -- and the ITC itself -- that could result from late-filed counterclaims.  Procedures for Investigations and Related Proceedings Concerning Unfair Practices in Import Trade, 59 Fed. Reg. 67,622, 67,624 (Dec. 30, 1994); 19 U.S.C. § 1337(c). The 10-business day deadline also reflects the ITC's execution of the Congressional mandate that counterclaims arising from ITC investigations "shall not delay or affect the [ITC] proceeding."  Uruguay Agreements.

B.    The Court Has No Jurisdiction Over Smart Glove's Untimely Filed Counterclaim.

Congress vested the ITC with the authority to determine the procedure for removing a counterclaim arising from an ITC investigation.  Uruguay Agreements.  The ITC exercised this authority by requiring counterclaimants like Smart Glove to file their counterclaim at least ten business days before the commencement of the ITC hearing.  See 19 C.F.R. § 210.14.  Smart Glove failed to comply with this statutory deadline, filing its Counterclaim eight business days before the ITC hearing date that it had known about for months.  Order 28 (Exh. A) (entered Oct. 5, 2007); Notice of Removal, ¶ 2 [D.E. #1].  Smart Glove's failure to timely file its Counterclaim with the ITC deprives this Court of jurisdiction over the Counterclaim.  The Court should therefore dismiss the Counterclaim for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).

C.    <u>Smart Glove's Claims are Compulsory Counterclaims.</u>

In addition, Smart Glove cannot cure its failure to meet the ITC's 10-business-day deadline by filing another lawsuit in this Court, or any other court.  Smart Glove's Counterclaim seeks damages and other relief from Tillotson's alleged "unfair competition" and "tortious interference with contract and/or prospective economic advantage" -- specifically, from Tillotson's enforcement of the '616 patent in the ITC hearing.  Counterclaim, ¶¶ 8-14, 16-24.

Allegations that Tillotson made misrepresentations to the Patent and Trademark Office ("PTO") in prosecuting the '616 patent or that Tillotson filed "sham" lawsuits and publicized these lawsuits all arise from Tillotson's actions in enforcing the '616 patent.  <u>Id.</u>  As such, Smart Glove's unfair competition and tortious interference claims are clearly compulsory counterclaims because they arise out of the "same transaction or occurrence" that is the subject of the ITC investigation and they do not require adding another party to this litigation.  <u>See</u> Fed. R. Civ. P. 13(a).

The validity of the '616 patent and Tillotson's ability to enforce the '616 patent are essential facts in both the ITC investigation and this Counterclaim.  "Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim.  That they are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter."  <u>Timberland Co. v. Sanchez</u>, 129 F.R.D. 382, 384-385 (D.D.C. 1990) (<u>citing Columbia Plaza Corp. v. Sec. Nat'l Bank</u>, 525 F.2d 620, 625 (D.D.C 1975) (citation omitted)).  Therefore, Smart Glove was required to timely raise its counterclaims arising from the ITC investigation in order to avoid being barred from raising such claims in future litigation.  <u>See Law Office of Jerris Leonard, P.C. v. Mideast Systems, Ltd.</u>, 111 F.R.D. 359, 361 (D.D.C. 1986).

**II.**     **Smart Glove Has Not Established that the District of Columbia is a Proper Venue.**

Alternatively, the Court should dismiss Smart Glove's Counterclaim for improper venue. Smart Glove claims that venue is proper in this action pursuant to 28 U.S.C. § 1391(a)(2).  See Counterclaim, ¶ 7.  Upon Tillotson's challenge to venue under this statute, Smart Glove must establish that a "substantial part" of the events or omissions giving rise to a claim occurred in the district, or a "substantial part" of property that is the subject of the action is situated in this district.  See 28 U.S.C. § 1391(a)(2).  Because Smart Glove has not provided the Court with facts sufficient to suggest that a "substantial part" of the events occurred in the District of Columbia, the Court should dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406.

A.     Smart Glove Has the Burden of Establishing that Venue is Proper in the District of Columbia.

Smart Glove bears the burden of alleging facts that demonstrate venue is proper in this Court.  See Hunter v. Johanns, 517 F. Supp. 2d 340, 343 (D.D.C. 2007) ("[T]he plaintiff ... bears the burden of establishing that venue is proper.") (citations omitted); Modaressi v. Vedadi, 441 F. Supp. 2d 51, 53 (D.D.C. 2006) ("Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff bears the burden of establishing that venue is proper.") (citing Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); see also Davis v. Amer. Soc. of Civil Engin., 290 F. Supp. 2d 116, 121 (D.D.C. 2003) ("Although the D.C. Circuit has not identified the party who bears the burden in a challenge to venue, the majority of courts appear to place the burden on the plaintiff. 5A FED. PRAC. & PROC.2d § 1352 (noting that placing the burden on the plaintiff is consistent with the "plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.")).  Smart Glove has not carried that burden here.

B.      Smart Glove Fails to Meet its Burden of Establishing Venue in this District.

Smart Glove fails to provide the Court with sufficient facts to support its allegations that a "substantial part" of the events giving rise to the claim occurred in the District of Columbia.  In its Counterclaim, Smart Glove alleges claims for unfair competition and tortious interference based on the following:

- Tillotson's alleged misrepresentations or omissions to the PTO -- which would suggest Virginia is the proper forum;[8]

- Tillotson's litigation to enforce the validity of the '616 Patent filed in Georgia -- which would suggest Georgia is the proper forum;

- Publication of such litigation on the internet -- which presumably occurred everywhere so it suggests no particular forum; and

- The ITC hearing -- which would suggest the District of Columbia is the proper forum.

Counterclaim, ¶¶ 10, 11, 13, 14.

The first three allegations underlying Smart Glove's Counterclaim do not support the finding that the District of Columbia is the proper forum for this action.  Smart Glove fails to identify how the alleged misrepresentations or omissions to the PTO, litigation in Georgia or elsewhere, or threats of potential litigation has caused Smart Glove to lose sales or incur any damage in the District of Columbia.  Alleged facts based on mere unsubstantiated assertions or mere speculation are not enough to establish venue.  See Davis, 290 F. Supp. 2d at 122 ("[T]he

---

[8]  The PTO offices are located in Virginia so any alleged misrepresentations or omissions presumably would have occurred in Virginia, and not in the District of Columbia.  See PTO Office Map (Ehx. C).

Court will not accept mere speculation of such occurrences as sufficient to establish venue pursuant to 1391(b)."); Saudi v. Northrup Grumman Corp., 273 F. Supp. 2d 101, 104 (D.D.C. 2003) (speculative facts are too far removed to establish that a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia); Mikkilineni v. Pennsylvania., No. Civ. A. 02-1205, 2003 WL 21854754, at *7 (D.D.C. Aug. 5, 2003) (Exh. D) (unsubstantiated statements that omissions occurred within the district were conclusory in nature and did not satisfy the requirements necessary to establish venue). As a result, Smart Glove's unsubstantiated and conclusory allegations regarding misrepresentations to the PTO, "sham" litigation or the publication of such litigation fails to meet the "substantial part" test necessary to establish that venue is proper in the District of Columbia.

In fact, the only connection to this forum that Smart Glove actually alleges relates to the ITC hearing being conducted in the District of Columbia. Counterclaim, ¶ 11. Smart Glove is correct that there is an investigation being conducted by the ITC in the District of Columbia. This one act, however, is not enough to establish the "substantial part" of the events or omissions occurred in this district, which is necessary to establish venue under 28 U.S.C. § 1391(a)(2) or 28 U.S.C. § 1391(b)(2). See Crenshaw v. Antokol, 287 F. Supp. 2d 37, 43 (D.D.C. 2003) (the fact that one defendant maintained an office in the district was not sufficient to establish that venue was proper in the District of Columbia).

Therefore, Tillotson respectfully submits that, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406, this case should be dismissed for improper venue.

**III.    Alternatively, the Court Should Transfer this Action to the Northern District of Georgia.**

In the event that the Court does not dismiss this case for lack of subject matter jurisdiction or improper venue, the case should be transferred to the Northern District of Georgia where related suits are already pending.

Courts have broad discretion to transfer a case "for the convenience of the parties" or "in the interest of justice."   28 U.S.C. § 1404; see also Flynn v. Veazey Constr. Corp., 310 F. Supp. 2d 186, 193 (D.D.C. 2004) ("In addition, section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness.") (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612 (1964)).  The purpose behind 28 U.S.C. § 1404(a) is "to prevent the waste of 'time, energy and money' and 'to protect the litigants, witnesses, and the public against unnecessary inconvenience and expense.'"  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation omitted).  In the instant case, an examination of the case specific private interest factors and public interest factors supports a finding that transferring this case to the Northern District of Georgia is in both the parties' and public's best interest.

A.    A Review of the Private Interest Factors Supports Transfer of this Case.

In deciding whether to transfer a case, the private interest factors courts should consider include: (1) whether the claim arose elsewhere; (2) the convenience of the parties; (3) the convenience of the witnesses, to the extent that the witnesses may actually be unavailable for trial in one of the fora; (4) the ease of access to sources of proof; (5) defendant's choice of forum; and (6) plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants.  See Great Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 127 (D.D.C. 2001) (citing Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996)

(citations omitted)).  These private interest factors strongly favor transfer of this case to the

Northern District of Georgia.

First, the claims underlying this action did not arise in the District of Columbia.  Instead,

the claims most likely arose in Georgia and/or Virginia.  A central thrust of Smart Glove's

Counterclaims for unfair competition and tortious interference involve the allegation that

Tillotson is conducting "sham" litigation in Georgia.  Counterclaim, ¶ 10.  As a result, a court

sitting in the Northern District of Georgia is better situated to make the determination whether

such litigation was conducted in good faith.  Virginia is the other forum where the claims may

have arisen because Smart Glove's contentions about Tillotson's alleged misrepresentations to

the PTO presumably would have occurred in Virginia, where the PTO offices are located.  PTO

Office Map (Exh. C).

Second, an examination of the convenience of the parties suggests that their respective

principal places of business, Malaysia or Georgia, are a more convenient place for either party to

litigate this case.  Counterclaim, ¶¶ 1-2; Georgia Litigation Complaint, ¶ 1 (Exh. B).  In addition,

Georgia is a more convenient forum because the parties are already litigating a related case in

that forum so transfer to the Northern District of Georgia will be more efficient and save both

parties' litigation costs.

Third, and most importantly, Georgia appears to be the most convenient forum for the

witnesses in this action.  Transfer of the case to Georgia is in the best interest of prospective

witnesses because most of Tillotson's witnesses are presumably located in Georgia since it is

Tillotson's principal place of business.  Georgia Litigation Complaint, ¶1 (Exh. B).  Transfer to

Georgia is also in the best interest of prospective witnesses because transfer avoids the likelihood

that witnesses will have to travel to two jurisdictions to testify regarding the validity or

infringement of the '616 Patent.  See Mathis v. GEO Group. Inc., 535 F. Supp. 2d 83, 87 (D.D.C. 2008) ("Indeed, 'the most critical factor to examine under U.S.C. § 1404(a) is the convenience of the witnesses.'"); citing Chung v. Chrysler Corp., 903 F. Supp 160, 164 (D.D.C. 1995).

Fourth, Georgia is the forum that provides the easiest access to sources of proof. Tillotson's principal place of business is in Georgia so presumably this is the forum where a majority of the discovery will be conducted.  Georgia Litigation Complaint, ¶ 1 (Exh. B). Georgia is also the forum where Smart Glove alleges Tillotson filed "sham" lawsuits so the facts surrounding the filing and prosecution of these lawsuits are also presumably located in Georgia. Counterclaim, ¶ 10.

Fifth, Tillotson's choice of forum is Georgia.  Tillotson believes that Georgia is the most convenient forum for this action because:

- Georgia is Tillotson's principal place of business;

- The claims relating to the alleged "sham" litigation arose in Georgia; and

- The parties are already litigating a case concerning the validity of the ´616 patent.

Georgia Litigation Complaint, ¶¶1, 171-172, 207, 210-216 (Exh. B); Counterclaim, ¶ 10.

Sixth, Smart Glove's choice of forum, the District of Columbia, is not entitled to any deference because the District of Columbia has "no meaningful" ties to the controversy and no particular interest to the parties or subject matter.  See Greater Yellowstone Coal. v. Kempthorne, Civ. A. No. 07-2111, 2008 WL 1862298 at 3 (Apr. 24. 2008) (Exh. E) (plaintiff afforded substantial deference in all but those cases in which the chosen forum has no meaningful ties to the controversy or parties) (citation omitted); see also Bosworth, 180 F. Supp.

2d at 127 (plaintiffs' choice of forum is not given deference when the balance of convenience strongly supports the defendant's choice of forum).   For the reasons discussed above, Smart Glove has not established that its Counterclaim has any ties to this District of Columbia, except for the ITC investigation being held in the district.  Additionally, neither party has meaningful ties to this forum since Smart Glove's principal place of business is Malaysia and Tillotson's principal place of business is Georgia.  <u>See</u> Counterclaim, ¶¶ 1-2; Complaint in the Georgia Litigation, ¶ 1 (Exh. B).

Thus, a review of the six case specific private interest factors supports a finding that the balance of convenience is strongly in favor of transferring this action to the Northern District of Georgia.  In fact, five of the six private interest factors suggest that Georgia is the proper forum for Smart Glove's Counterclaim.

B.    <u>A Review of the Public Interest Factors Supports Transfer of this Case.</u>

Finally, a review of the public interest factors also supports transfer of this case to the Northern District of Georgia because the transfer is in the best interest of justice and promotes judicial economy.  Transfer of this Counterclaim to Georgia is in the best interest of justice and judicial economy because the parties will not unnecessarily tie up this Court's resources with a suit that is similar in nature to existing litigation being conducted in Georgia.  <u>See</u> <u>Barham v. UBS Financial Serv.</u>, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("interest of justice are better served when a case is transferred to the district where related actions are pending.") (citation omitted).  Transfer of Smart Glove's Counterclaim also avoids parallel suits and the possibility of inconsistent judgments.  <u>See</u> <u>Holland v. A.T. Massey Coal</u>, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("judicial economy would not be best served by having similar claims proceed on parallel tracks in neighboring jurisdictions").

Accordingly, if the Court declines to dismiss this case, then in the interest of efficiency and judicial economy we respectfully submit that the Court in its discretion should transfer this case to the Northern District of Georgia.

## CONCLUSION

For the foregoing reasons, Tillotson respectfully submits that the Court should grant Tillotson Motion to Dismiss Smart Glove's Counterclaim because it is untimely and because the District of Columbia is an improper venue.  In the event the Court declines to the Grant the Motion to Dismiss, then Tillotson respectfully submits that the Court in its discretion should transfer this case to the Northern District of Georgia in the interest of efficiency and judicial economy.

Respectfully submitted this 27th day of May, 2008.

/s  Brian Meiners
Brian Meiners
Washington D.C. Bar No. 482039

KING & SPALDING LLP

1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-2706
(202) 737-0500 (telephone)
(202) 626-3737 (facsimile)
Attorney for Tillotson Corporation

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMART GLOVE HOLDING, SDN. BHD.<br>and SMART GLOVE CORPORATION,<br>SDN. BHD.,<br><br>    **Counterclaimants,**<br><br> **v.**<br><br>TILLOTSON CORPORATION,<br><br>   **Counterclaim Defendant.**<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)   **CASE NO.: 1:08-cv-00797-RMC**<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER GRANTING MOTION TO DISMISS</u>

Upon consideration of the Motion to Dismiss on limitations grounds filed in the above-captioned action, the applicable law, and the record in this case, it is, by the Court, this ___ day of _____, 2008:

ORDERED that the Motion to Dismiss is [GRANTED and the case is dismissed] or [the case is TRANSFERRED to the Northern District of Georgia].


             _____
             Rosemary M. Collyer
             United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMART GLOVE HOLDING, SDN. BHD.<br>and SMART GLOVE CORPORATION,<br>SDN. BHD.,<br><br>      Counterclaimants,<br><br>      v.<br><br>TILLOTSON CORPORATION,<br><br>      Counterclaim Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      CASE NO.: 1:08-cv-00797-RMC |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing Motion to Dismiss, and accompanying Brief

in Support of the Motion, were served, via U.S. Mail, this 27th day of May, upon

> Scott M. Daniels
> Westerman, Hattori, Daniels & Adrian, LLP
> 1250 Connecticut Avenue, NW
> Washington, DC 20036

> /s   Brian Meiners
> Brian Meiners
> Washington D.C. Bar No. 482039
>
> KING & SPALDING LLP
>
> 1700 Pennsylvania Ave, NW
> Suite 200
> Washington, D.C. 20006-2706
> (202) 737-0500 (telephone)
> (202) 626-3737 (facsimile)
>
> Attorney for Tillotson Corporation

# Exhibit A

UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN NITRILE GLOVES** | Inv. No. 337-TA-608 |

AND

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN NITRILE RUBBER GLOVES** | Inv. No. 337-TA-612 |

**ORDER NO. 28: SETTING THE PROCEDURAL SCHEDULE**

(October 5, 2007)

Investigation 337-TA-608 was instituted by the Commission on June 29, 2007 and the notice of investigation was published in the Federal Register on July 6, 2007.[1]  The Administrative Law Judge set a fourteen-month target date of September 8, 2008 for completion of this investigation by the Commission in Order No. 2.  Order No. 2 also requested discovery statements from the parties by August 10, 2007.

Investigation 337-TA-612 was instituted by the Commission on August 16, 2007 and the notice of investigation was published in the Federal Register on August 22, 2007.[2]  On September 19, 2007, the Administrative Law Judge issued an initial determination, Order No. 19, which consolidated investigation 337-TA-608 and 337-TA-612.  In that initial determination, the Administrative Law Judge set a fifteen-month target date of November 22, 2008 for Inv. No. 337-

---

[1] *See* 72 Fed. Reg. 37,052 (July 6, 2007).
[2] *See* 72 Fed. Reg. 47,072 (August 22, 2007).

TA-612 and extended the target date in Inv. No. 337-TA-608 to sixteen-and-a-half months, or November 22, 2008.[3] Order No. 19 also requested discovery statements from the parties by October 1, 2007. On September 28, 2007, Complainant Tillotson Corporation ("Tillotson") filed a motion for extension of time to file the requested discovery statement, which was granted by Order No. 24, extending the time to file discovery statements to October 3, 2007.

On October 1, 2007, separate discovery statements were received from the following Respondents: Cardinal Health, Inc.; Cardinal Health 200, Inc.; and Cardinal Health Malaysia 211 Sdn. Bhd. (collectively "Cardinal Health"), and Henry Schein, Inc. and HSI Gloves, Inc. (collectively "HSI"). On October 3, 2007, Complainant and Respondents Ansell, Ltd.; Darby Group Companies, Inc.; Dynarex Corporation; Liberty Glove and Safety Co.; Protective Industrial Products Inc.; Tronex International Inc.; Top Glove Corporation Bhd.; Laglove (M) Sdn. Bhd.; Smart Glove Holdings Sdn. Bhd.; YTY Holdings Sdn. Bhd.; Kossan Rubber Industries Bhd., Ltd.; Riverstone Resources Sdn. Bhd.; PT Shamrock Manufacturing Corporation; JDA (Tianjin) Plastic Rubber Co.; Hartalega Holdings Bhd.; PT Medisafe Technologies and Latexx Partners Berhad filed a joint proposed procedural schedule. On October 3, 2007, separate discovery statements were received from the Commission Investigative Staff ("Staff") and Respondents Seal Polymer Industries Bhd. ("Seal Polymer"), Supermax Corporation Bhd. ("Supermax"), and Latexx Partners Berhad ("Latexx") agreeing with the joint proposed procedural schedule filed by Complainant.

Although the undersigned strongly encouraged the parties to "make intensive good faith efforts to agree to a procedural schedule" in Order No. 19, the parties were unable to agree on a

---

[3] Note that November 22, 2008 falls on a Saturday. Therefore, the target date is actually set for November 24, 2008.

procedural schedule. The dispute between the parties is the proposed scope and date of the *Markman* hearing. In Order No. 19, the undersigned proposed a *Markman* hearing for December 13-14, 2007. Cardinal Health and HSI oppose a December *Markman* hearing and propose that the *Markman* hearing take place in late February. In the alternative, Cardinal Health and HSI propose that the *Markman* hearing that is in December be limited to the issues raised in the current pending motions for summary judgment. Cardinal Health and HSI assert that it is unreasonable to have a *Markman* hearing just four months after the investigation is instituted, and note that in Inv. No. 337-TA-600, the *Markman* hearing was scheduled for seven months after the investigation was instituted.

The undersigned does not find Cardinal Health and HSI's arguments to be persuasive. The target date in Inv. No. 337-TA-600 is 19 months. Therefore, the longer than usual target date allowed the undersigned to schedule the *Markman* hearing in Inv. No. 337-TA-600 at a later time. In these two investigations the target date is only 16 1/2 and 15 months. The undersigned notes that in previous cases where the target date was set at 15 months, a *Markman* hearing was held five months after the investigation was instituted.[4]  In Inv. No. 337-TA-547, there were five patents at issue involving more complex technology than the technology involved in the one patent-at-issue in this investigation. Accordingly, the undersigned finds that a December *Markman* hearing is reasonable.

In addition, the undersigned has no intention of limiting the December *Markman* hearing to only the claim terms at issue in the pending motions for summary judgement. As noted in the Ground Rules, the purpose of the *Markman* hearing is for "construing any disputed claim terms of the patents at issue in the investigation" and that after the order construing the disputed claims is issued, "discovery and briefing . . . shall be limited to that claim construction." The parties are expected to

---

[4] *See* Inv. No. 337-TA-547, Order No. 3, September 19, 2005.

brief all disputed claim terms during the December *Markman* hearing . All other claim terms shall be deemed as undisputed.[5]

Based on a review of the proposed procedural schedules, the undersigned hereby adopts the following procedural schedule:

| Event | Deadline Date |
|---|---|
| Exchange list of terms each party contends requires construction | October 29, 2007 |
| First settlement conference | By October 31, 2007 |
| File identification of claim construction expert witnesses, including their expertise and curriculum vitae for claim construction hearing | November 2, 2007 |
| Submission of first settlement conference joint report | November 5, 2007 |
| Exchange interpretations by the private parties for each term the parties contend require construction, along with preliminary identification of supporting intrinsic and extrinsic evidence (including claim construction expert reports, if any) | November 9, 2007 |
| Exchange of rebuttal claim construction expert reports | November 16, 2007 |
| Meet and confer in effort to narrow the list of terms that each party contends require construction. Submission of final list of terms that each party contends require construction. | November 16, 2007 |
| File tentative list of witnesses a party will call to testify at the *Markman* hearing, with an identification of each witness' relationship to the party | November 16, 2007 |
| File opening claim construction briefs - private parties | November 21, 2007 |
| File opening claim construction brief - Staff | November 29, 2007 |

---

[5] *See the* undersigned previous statements in previous issued Orders construing the terms of the asserted claims of the patents at issue that "All other claim terms shall be deemed as undisputed and shall be interpreted by the undersigned in accordance with 'their ordinary meaning as viewed by one of ordinary skill in the art.'" *Certain Personal Computers, Server Computers, and Components Thereof*, Order No. 15 (February 8, 2005) at 23; *Certain Personal Computers, Monitors and Components Thereof*, Order No. 22 (March 10, 2005) at 20 (citations omitted).

| Event | Deadline Date |
|---|---|
| File rebuttal claim construction briefs - private parties | December 5, 2007 |
| File rebuttal claim construction brief - Staff | December 11, 2007 |
| Tutorial (if necessary) and *Markman* hearing | December 13-14, 2007 at 9:00 a.m. in Courtroom A |
| File notice of prior art | December 19, 2007 |
| Submission of *Markman* joint proposed claim construction chart | December 21, 2007 |
| File identification of expert witnesses on issues other than claim construction, including their expertise and curriculum vitae | January 4, 2008 |
| Second settlement conference | By January 18, 2008 |
| Exchange of initial expert reports on issues other than claim construction | January 25, 2008 |
| File tentative list of witnesses a party will call to testify at the hearing, with an identification of each witness' relationship to the party | January 25, 2008 |
| Submission of second settlement conference joint report | January 25, 2008 |
| Fact discovery cutoff and completion | February 19, 2008 |
| Exchange of rebuttal expert reports on issues other than claim construction | February 22, 2008 |
| Expert discovery cutoff and completion | March 21, 2008 |
| Deadline for filing summary determination motion | March 27, 2008 |
| Deadline for motions to compel | March 28, 2008 |
| Exchange of exhibit lists among the parties | April 7, 2008 |
| Third settlement conference | By April 11, 2008 |
| Submit and serve direct exhibits (including witness statements), with physical and demonstrative exhibits available -- Complainant(s) and Respondent(s) | April 14, 2008 |
| Submit and serve direct exhibits (including witness statements), with physical and demonstrative exhibits available -- Staff | April 17, 2008 |

| Event | Deadline Date |
|-------|---------------|
| Submission of third settlement conference joint report | April 18, 2008 |
| File objections to direct exhibits (including witness statements) | April 21, 2008 |
| Submit and serve rebuttal exhibits (including witness statements), with rebuttal physical and demonstrative exhibits available -- all parties | April 28, 2008 |
| File responses to objections to direct exhibits (including witness statements) | April 28, 2008 |
| File pre-trial statements and briefs -- Complainant(s) and Respondent(s) | April 30, 2008 |
| File requests for receipt of evidence without a witness | May 5, 2008 |
| File objections to rebuttal exhibits (including witness statements) | May 5, 2008 |
| Deadline for motions *in limine* | May 6, 2008 |
| File pre-trial statement and brief -- Staff | May 7, 2008 |
| File high priority objections statement | May 9, 2008 |
| File responses to objections to rebuttal exhibits (including witness statements) | May 12, 2008 |
| File responses to high priority objections statement | May 13, 2008 |
| File responses to motions *in limine* | May 13, 2008 |
| Pre-trial conference | May 16, 2008 at 10:00 a.m. in Courtroom B |
| Opening Statements | May 16, 2008 following pre-trial conference |
| Trial | May 19-23, 2008 and May 27-30, 2008 at 9:00 a.m. in Courtroom B[6] |

---

[6] In the undersigned's view, 9 days of trial time is excessive when considering that there is only one patent-at-issue, that there no live direct testimony, and that claim construction issues will already have been decided. The parties should reevaluate their approximation of time needed to present their case closer to the trial date.

| Event | Deadline Date |
|---|---|
| File initial post-trial briefs, proposed findings of fact and conclusions of law, and final exhibit lists | June 13, 2008 |
| File reply post-trial briefs, objections and rebuttals to proposed findings of fact | June 27, 2008 |
| Initial Determination due | August 25, 2008[7] |
| Target date for completion of investigation | November 24, 2008 |

For the dates set forth above that require a submission or filing, the date set forth is the date that the submission or filing must be at or filed at the Commission (by the close of business) and is not the date that such submission or filing is merely served.

SO ORDERED.

Charles E. Bullock
Administrative Law Judge

---

[7] August 24, 2008 falls on a Sunday.

**IN THE MATTER OF CERTAIN NITRILE GLOVES**         337-TA-608 & 337-TA-612

CERTIFICATE OF SERVICE

I, Marilyn R. Abbott, hereby certify that the attached **ORDER** was served upon, **Vu Q. Bui, Esq.,** Commission Investigative Attorney, and the following parties via first class mail and air mail where necessary on <u>October 5</u>          , 2007.

Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, DC   20436

**FOR COMPLAINANT TILLOTSON CORPORATION:**
Gilbert B. Kaplan, Esq.
Jeffrey M. Telep, Esq.
Taryn L. Koball, Esq.
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006-4706

Anthony B. Askew, Esq.
Katrina M. Quicker, Esq.
Jason M. Pass, Esq.
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, GA 30309

Gregory C. Dorris, Esq.
Charles H. Carpenter, Esq.
Sean P. Bamford, Esq.
**PEPPER HAMILTON, LLP**
600 Fourteenth Street, N.W.
Washington, DC 20005-2004

William D. Belanger, Esq.
Aaron J. Levangie, Esq.
**PEPPER HAMILTON, LLP**
101 Federal Street, Suite 1010
Boston, MA 02110-1817

**IN THE MATTER OF CERTAIN NITRILE GLOVES**      337-TA-608 & 337-TA-612

**FOR RESPONDENT ANSELL LTD.:**
    Thomas B. Kenworthy, Esq.
    David W. Marston Jr., Esq.
    Rebecca J. Hillyer, Esq.
    **MORGAN, LEWIS & BOCKIUS LLP**
    1701 Market Street
    Philadelphia, PA 19103-2921

**FOR RESPONDENTS CARDINAL HEALTH, INC., CARDINAL HEALTH 200, INC. &
CARDINAL HEALTH MALAYSIA 211 Sdn. Bhd.:**
    Paul F. Brinkman, Esq.
    Jeffrey Schwartz, Esq.
    **ALSTON & BIRD LLP**
    950 F Street, N.W.
    Washington, DC 20004-1404

**FOR RESPONDENT DARBY GROUP COMPANIES, INC.:**
    Michael S. French, Esq.
    Shanon J. McGinnis, Esq.
    Sarah-Nell H. Walsh, Esq.
    Joseph D. Wargo, Esq.
    **WARGO & FRENCH, LLP**
    1170 Peachtree Street NE, Suite 2020
    Atlanta, GA 30309

**FOR RESPONDENT DYNAREX CORPORATION:**
    Merritt R. Blakeslee, Esq.
    Donald E. DeKieffer, Esq.
    J. Kevin Horgan, Esq.
    Gregory S. Menegaz, Esq.
    **DEKIEFFER & HORGAN**
    729 Fifteenth Street, N.W., Suite 800
    Washington, DC 20005

**IN THE MATTER OF CERTAIN NITRILE GLOVES**        **337-TA-608 & 337-TA-612**

**FOR RESPONDENTS**
    **HARTALEGA HOLDINGS Bhd.**
    **JDA (TIANJIN) PLASTIC RUBBER CO. LTD**
    **KOSSAN RUBBER INDUSTRIES Bhd. Ltd.**
    **LAGLOVE (M) Sdn. Bhd.**
    **LATEXX PARTNERS BERHAD**
    **PT MEDISAFE TECHNOLOGIES**
    **PT SHAMROCK MANUFACTURING CORPORATION**
    **RIVERSTONE RESOURCES Sdn. Bhd.**
    **SMART GLOVE HOLDINGS Sdn. Bhd.**
    **YTY HOLDINGS Sdn. Bhd.**
    **TOP GLOVE CORPORATION Bhd.:**
        Perry R. Clark, Esq.
        Jenny Lee, Esq.
        Michael T. Pieja, Esq.
        Kenny Nguyen, Esq.
        **KIRKLAND & ELLIS LLP**
        555 California Street
        San Francisco, CA 94104-1501

**FOR RESPONDENT SMART GLOVE HOLDINGS, Sdn.Bhd.**
        Scott M. Daniels, Esq.
        Ken-Ichi Hattori, Esq.
        Ryan B. Chirnomas, Esq.
        Kumiko Ide, Esq.
        Shuji Yoshizaki, Esq.
        **WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP**
        1250 Connecticut Avenue, N.W.
        Suite 700
        Washington, DC   20036

**FOR RESPONDENTS HENRY SCHEIN, INC. & HSI GLOVES INC.:**
        Lawrence K. Nodine, Esq.
        Robin L. Gentry, Esq.
        J. Scott Anderson, Esq.
        **NEEDLE & ROSENBERG, P.C.**
        999 Peachtree Street, Suite 1000
        Atlanta, GA 30309-3915

**IN THE MATTER OF CERTAIN NITRILE GLOVES**         **337-TA-608 & 337-TA-612**

**FOR RESPONDENT LIBERTY GLOVE, INC.:**
Rosa S. Jeong, Esq.
Philippe M. Bruno, Esq.
Mark L. Hogge, Esq.
Shailendra K. Maheshwari, Esq.
Kate A. Jefcoat, Esq.
**GREENBERG TRAURIG, LLP**
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006

**FOR RESPONDENT PROTECTIVE INDUSTRIAL PRODUCTS, INC.:**
J. Rodgers Lunsford III, Esq.
Elizabeth Borland, Esq.
**SMITH, GAMBRELL, AND RUSSELL LLP**
Promenade II, Suite 3100
Atlanta, GA 30309

**FOR RESPONDENT TRONEX INTERNATIONAL, INC.:**
Maureen F. Browne, Esq.
Jenny L. Workman, Esq.
**HELLER EHRMAN, LLP**
1717 Rhode Island Avenue, N.W.
Washington, DC 20036-3001

**FOR RESPONDENT QRP INC. d/b/a QRP GLOVES:**
Daniel J. Quigley, Esq.
QUIGLEY & WHITEHILL P.L.C.
2730 E. Broadway Blvd., Suite 160
Tucson, AZ 85716-5384

**FOR RESPONDENTS SEAL POLYMER INDUSTRIES Bhd & SUPERMAX
CORPORATION Bhd:**
Todd L. Juneau, Esq.
**JUNEAU PARTNERS, PLLC**
2121 Eisenhower Avenue #200
Alexandria, VA 22314

**IN THE MATTER OF CERTAIN NITRILE GLOVES**         **337-TA-608 & 337-TA-612**

**FOR RESPONDENT YEE LEE CORPORATION Bhd.:**
    Keith R. Marino, Esq.
    Ralph A. Mittelberger, Esq.
    **ARENT FOX LLP**
    1050 Connecticut Avenue NW
    Washington, DC 20036-5339

**RESPONDENTS:**
    **ADENNA, INC.**
    12216 McCann Drive
    Santa Fe Springs, CA 90670

    **DASH MEDICAL GLOVES, INC.**
    c/o Robert J. Sullivan
    1018 South 54th Street
    Franklin, WI 53132

    **DENTEXX/FIRST MEDICA INFECTION CONTROL ASSOCIATE**
    3704C Boren Drive
    Greensboro, NC 27407

    **MEDTEXX PARTNERS INC.**
    102 Engle St. FL2
    Englewood, NJ 07631

    **Ansell (Thailand) Ltd.**
    110 Moo 4
    Chalongkrung Road
    Bangkok, Thailand 10520

    **Ansell Healthcare Products LLC**
    200 Schulz Drive
    Red Bank, NJ 07701

    **Ansell Protective Products Inc.**
    200 Schulz Drive
    Red Bank, NJ 07701

    **Top Glove Sdn. Bhd.**
    Lot 4968
    Jalan Teratai
    Batu 6

**IN THE MATTER OF CERTAIN NITRILE GLOVES**    **337-TA-608 & 337-TA-612**

Off Jalan Meru
41050 Klang
Selangor D.E.
Malaysia

**TG Medical (USA) Inc.**
165 North Aspen Ave.
Azusa, CA 91702

**Hartalega Sdn. Bhd.**
Lot 9
Jalan Kuang Bulan
Taman Kepong Industrial Estate
52100 Kuala Lumpur
Malaysia

**Pharmatex USA Inc.**
77530 Enfield Lane Bldg. 1
Suite 203
Palm Desert, CA 92211

**Perusahaan Getah Asas Sdn. Bhd.**
Lot 754
Jalan Haji Sirat
Off Jalan Kapur
42100 Klang
Selangor D.E.
Malaysia

**Kossan Gloves Inc. d/b/a Sintex**
16810 Baker Springs #219
Houston, TX 77084

**PT Haloni Jane**
JL. Raya Serang KM 13.8 Cikupa Tangerang
Indonesia

**Shamrock Manufacutring Company Inc.**
5445 Daniels Street
·Chino, CA 91710

**IN THE MATTER OF CERTAIN NITRILE GLOVES**       **337-TA-608 & 337-TA-612**

**Smart Glove Corporation Sdn. Bhd.**
Lot 6487
Batu 5 3/4
Sementajln Kapar
42100 Klang
Selangor D.E.
Malaysia

**YTY Industry (Manjung) Sdn. Bhd.**
Lot 1422-1424
Batu 10 Lekir
32020 Sitiawan
Perak Darul Ridzuan
Malaysia

<u>PUBLIC MAILING LIST</u>

Sherry Robinson
LEXIS - NEXIS
8891 Gander Creek Drive
Miamisburg, OH   45342

Ronnita Green
Thomson West
1100 – 13th Street NW
Suite 200
Washington, DC   20005

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

TILLOTSON CORPORATION,　　　　　　)
d/b/a BEST MANUFACTURING　　　　　)
COMPANY　　　　　　　　　　　　　　　)

　　　　　　　　　　　　　　　　　　　　)　CIVIL ACTION FILE NO.:
　　　　　　Plaintiff,　　　　　　　　　)

v.　　　　　　　　　　　　　　　　　　　)
SUPERMAX CORPORATION BHD.;　　　)
511 FOODSERVICE LTD.; A.R.　　　　　)
MEDICOM INC.; ABCO SAFETY; ABEL　)
UNLIMITED, INC.; ACTION TEAM　　　)
MEDICAL; ADENNA, INC.; AERO-　　　　)
MED, LTD.; AGIO GROUP INC.;　　　　　)
AKERS INDUSTRIES, INC.;　　　　　　　)
ALLIANCE RUBBER PRODUCTS SDN.　)
BHD.; ALMEDIC; ALPINE GLOVES,　　　)
INC.; AMERICAN HEALTHCARE　　　　)
PRODUCTS, INC.; ANCIN INC.; APL　　　)
INDUSTRIES BHD.; APL PRODUCTS　　)
SDN. BHD.; ASIA DYNAMICS INC.;　　　)
ASIA PACIFIC LATEX SDN. BHD.;　　　　)
ASIAN DYNAMICS GROUP INC.;　　　　　)
ATLANTIS PLASTICS, INC.; AUDRA　　　)
INC.; BAND-IT RUBBER CO.; BASIC　　　)
MEDICAL INDUSTRIES INC.; BAY　　　　)
MEDICAL CO., INC.; BEIJING　　　　　　)
CHEMICAL INDUSTRY GROUP　　　　　　)
RUBBER & PLASTIC PRODUCTS　　　　　)
FACTORY; BEIJING HUATENG　　　　　　)
RUBBER PLASTIC; BEIJING LATEX　　　)
FACTORY; BEIJING REAGENT LATEX　　)
PRODUCTS CO., LTD.; BEIJING　　　　　)
RUBBER & PLASTICS PRODUCTS　　　　)
FACTORY; BESGLOVE MEDICARE　　　　)
SDN. BHD.; BEST TEX　　　　　　　　　　)
INTERNATIONAL INC.; BIO-FLEX　　　　)
INTERNATIONAL, INC.; BOSS　　　　　　)
MANUFACTURING CO., INC;　　　　　　　)

**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Rome

SEP 2 7 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

07-CV- 193-RLV

BOWERS MEDICAL SUPPLY CO.;                )
BOYD MEDICAL & SAFETY SUPPLIES,           )
INC.; BRIGHT ELEMENT SDN. BHD.;           )
BRIGHT WAY HOLDINGS SDN. BHD.;            )
BRIGHTNESS CORP.; CARMICHAEL              )
INTERNATIONAL SERVICE;                    )
CHEMSOURCE INTERNATIONAL                  )
INC.; CHEMTECH INTERNATIONAL,             )
LLC; CLINICAL SUPPLY CO.; COAST           )
SCIENTIFIC INC.; COLONIAL                 )
SURGICAL SUPPLY, INC.;                    )
CONTINENTAL LAB PRODUCTS;                 )
CONTRACT LATEX DIPPERS SDN.               )
BHD.; CRANBERRY (M) SDN. BHD.;            )
CRANBERRY USA INC.; CROSS                 )
PACIFIC ENTERPRISE CO. LTD.;              )
CROSSTEX INTERNATIONAL, INC.;             )
CT INTERNATIONAL; DASH                    )
MEDICAL GLOVES, INC.; DELTA               )
MEDICAL SUPPLY GROUP, INC.                )
D/B/A THE DELTA GROUP;                    )
DENTEXX/FIRST MEDICA                      )
INFECTION CONTROL ASSOCATION;             )
DERMATEC DIRECT; DESIGNER                 )
CARE CO., LTD.; DIGITCARE CORP.;          )
DURASAFE, INC.; DYNAREX CORP.;            )
ECON DISPOSABLE SUPPLIES, INC.;           )
ESSENTIAL CARES; EXPEDITORS              )
INTERNATIONAL OF WASHINGTON;              )
FIRSTLINE LLC; GENUINE GLOVE;             )
GLOBAL IMPORTS USA; GLOBE                 )
SHAMROCK, INC.; GLOVCO (M) SDN.           )
BHD.; GLOVCO HOLDING SDN.                 )
BHD.; GLOVE CENTER; GLOVE                 )
SOURCE, INC.; GLOVE USA, INC.;            )
GOLDEN PACIFIC HEALTHCARE                 )
PRODUCTS, INC.; GOLDMAX                   )
INDUSTRIES, INC.; GREAT GLOVE             )
(USA) INC.; GREAT GLOVE SDN.              )
BHD.; GREEN PROSPECT SDN BHD.;            )

2

GX CORPORATION SDN. BHD.;                    )
H & L INTERNATIONAL, INC.;                    )
HANDGARDS, INC.; HARTALEGA              )
HOLDINGS BHD.; HARTALEGA SDN.        )
BHD.; HOURGLASS INDUSTRIES,              )
INC.; IDEAL HEALTHCARE GROUP           )
CO. LTD.; IDEAL MEDICAL                       )
INDUSTRIES CO., LTD.; IMS, INC.;              )
INDORAMA GROUP COMPANIES;             )
INNOVATIVE HEALTHCARE CORP.;          )
INTCO INDUSTRIAL CO. LTD.;                 )
INTER ORIENT SERVICES; INTERMED      )
GLOVES; INTERNATIONAL                      )
SOURCING CO., INC.; INTERWORLD        )
NETWORK INT'L, INC.; JABIL                  )
GLOBAL SERVICES; JDA (TIANJIN)          )
PLASTIC RUBBER CO., LTD.; JDA             )
INTERNATIONAL, INC.;                          )
JXJ LABS INC.; KEMCO SUPPLY OF          )
WASHINGTON INC.; KOSSAN                  )
GLOVES, INC. D/B/A SINTEX;                 )
KOSSAN HOLDINGS (M) SDN. BHD.;        )
KOSSAN LATEX INDUSTRIES (M)            )
SDN. BHD.; KOSSAN RUBBER                 )
INDUSTRIES BHD.; LAGLOVE M SDN.       )
BHD.; LDF INDUSTRIES, INC.;                 )
LI AN SAFETY PRODUCTS CORP.;           )
LIBERTY GLOVE AND SAFETY CO.;         )
LIFE SCIENCE PRODUCTS; LIFETIME       )
GLOVE CO., INC.; LOWRIE &                  )
COMPANY MEDICAL RESOURCE,            )
INC.; MALAYTEX PRODUCTS, SDN.          )
BHD.; MALAYTEX USA, INC. D/B/A          )
PRO2 SOLUTIONS, INC.; MAYER             )
LABORATORIES INC.; MAYTEX               )
CORP.; MCCORDICK GLOVE &                )
SAFETY INC.; MED EXPRESS INC.;           )
MEDCO SUPPLY CO.; MEDGLUV             )
INC.; MEDICAL SAFETY SUPPLY;             )
MEDI-FLEX LIMITED D/B/A                    )

3

FLEXITECH SDN. BHD.; MEDISAFE                    )
TECHNOLOGIES (USA); MEDTEXX                      )
PARTNERS INC.; METRON                            )
TECHNOLOGY CORP.; METRO-                         )
PACIFICA, LLC; MEXPO                             )
INTERNATIONAL, INC.; MIDAVOL                     )
PROTECTIVE PRODUCTS;                             )
MULITSAFE SDN. BHD.; MYDENT                      )
INTERNATIONAL CORP.; NINGBO                      )
TIANSHUN RUBBER PRODUCTS CO.;                    )
NITRITEX, LTD.; NORMANDIN                        )
PACIFIC HOLDINGS CORP. D/B/A                     )
PACIFICA; NORPAK INC.; NORTH                     )
SAFETY PRODUCTS, INC.;                           )
NORTHERN SAFETY CO., INC.; OAK                   )
TECHNICAL, LLC; PACEWELL USA                     )
INC.; PAC-KEM VALUE MEDICAL                      )
SUPPLY; PDQ TRADING CO., INC.;                   )
PERFECT FIT GLOVE CO., LLC;                      )
PERUSAHAAN GETAH ASAS SDN.                       )
BHD.; PHARMATEX USA, INC.; PM                    )
GLOVES, INC.; PREVENTIVE CARE,                   )
INC.; PRIMARY PRODUCTS;                          )
PRODUCT CLUB, INC.; PROSEMEDIC                   )
S.A.; PRO-STAT INC.; PROTECTIVE                  )
INDUSTRIAL PRODUCTS, INC.;                       )
PSS/WORLD MEDICAL, INC.; PT                      )
HALONI JANE; PT MAJA AGUNG                       )
LATEXINDO; PT MEDISAFE                           )
TECHNOLOGIES; PT SHAMROCK                        )
MANUFACTURING CORPORATION;                       )
PT SMART GLOVE INDONESIA;                        )
QRP, INC. D/B/A QRP GLOVES, INC.;                )
QUANTUM LABS INC.; RAMPART                       )
INTERNATIONAL, INC.;                             )
RIVERSTONE RESOURCES SDN.                        )
BHD.; RTS SUPPLY; SEAL POLYMER                   )
INDUSTRIES BHD.; SEAL POLYMER                    )
INDUSTRIES SDN. BHD.; SEATTLE                    )
GLOVE, INC.; SELECT MEDICAL                      )

4

PRODUCTS; SELECT MEDICAL )
SUPPLY INC.; SENTRY MEDICAL )
PRODUCTS, INC.; SHAMROCK )
MANUFACTURING COMPANY, INC.; )
SHAMROCK MARKETING )
COMPANY, INC.; )
SHANGHAI CHAMPION PLASTIC )
PRODUCTS CO., LTD.; SHANGHAI )
KNITWEAR IMPORT & EXPORT CO., )
LTD.; SHEEN MOORE ENTERPRISES )
CO. LTD.; SHEPARD MEDICAL )
PRODUCTS, INC.; SIERRA )
SCIENTIFIC, INC. D/B/A VALUE- )
TEK; SMART GLOVE CORPORATION )
SDN. BHD.; SMART GLOVE )
HOLDINGS SDN. BHD.; SOLID WING )
TRADING CORP.; SOUTHERN )
PACIFIC COAST CORPORATION )
D/B/A LIFE GUARD MEDICAL )
SUPPLY, INC.; SRI JOHANI SDN. )
BHD.; SS WHITE BURS, INC.; )
STERIGARD; STRATA MEDICAL INC.; )
SUPERIOR GLOVE WORKS LTD.; )
SUPERMAX GLOVE INDUSTRIES )
SDN. BHD.; SUPERMAX GLOVE )
MANUFACTURING SDN. BHD.; )
SUPERMAX LATEX PRODUCTS SDN. )
BHD.; SUPERMAX SDN. BHD.; )
SUPERMAX, INC. D/B/A AURELIA )
GLOVES; SYRVET INC.; )
TECHNIGLOVE INTERNATIONAL, )
INC.; THE CAMERON AND )
BARKELEY CO.; )
TILLOTSON HEALTHCARE CORP.; )
TNT ENTERPRISE, INC.; TRONEX )
INTERNATIONAL INC.; UNITED )
DELTA, INC.; UNIVERSAL X-RAY )
COMPANY OF CANADA; UTI )
PERSHIP (PVT) LTD.; WEAR SAFE (M) )
SDN. BHD.; WILLIAM A. MCGINTY )

COMPANY; YEE LEE CORPORATION    )
BHD.; YEE LEE HOLDINGS SDN.    )
BHD.; YTY HOLDINGS SDN. BHD.;    )
YTY INDUSTRY (MANJUNG) SDN.    )
BHD.; YTY INDUSTRY SDN. BHD.;    )
and YUJIANG IDEAL MEDICAL    )
INDUSTRIES CO., LTD.    )
                                            )
        Defendants.    )

## COMPLAINT

Plaintiff    TILLOTSON    CORPORATION,    d/b/a    BEST
MANUFACTURING COMPANY, (hereinafter "Tillotson"), for its complaint
against Defendants, alleges as follows:

### PARTIES

1.

Plaintiff Tillotson is a Massachusetts corporation having a place of
business in Georgia at Best Manufacturing Company, Edison Street, Menlo,
Georgia 30731.   Tillotson is engaged in the business of designing, using,
manufacturing, offering for sale, and selling elastomeric materials and hand
gloves made from elastomeric materials.

2.

Defendant 511 Foodservice Ltd. is a corporation having a place of
business at 2771 Portland Dr., Unit 3, Oakville, Ontario, Canada L6H 6M6.  511
Foodservice Ltd. is engaged in the business of making, using, offering for sale,

6

and selling hand gloves made from elastomeric materials. On information and belief, 511 Foodservice Ltd. has conducted business in the Northern District of Georgia. In its business, 511 Foodservice Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

3.

Defendant A.R. Medicom Inc. is a corporation having a place of business at 1200 55 E. Avenue, Lachine, Quebec, Canada QC H8T 3J8. A.R. Medicom Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, A.R. Medicom Inc. has conducted business in the Northern District of Georgia. In its business, A.R. Medicom Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

4.

Defendant Abco Safety is a corporation having a place of business at 11183 Woodward Lane, Cincinnati, Ohio, 45241. Abco Safety is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Abco Safety has conducted business in the Northern District of Georgia. In its business, Abco Safety has

7

committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

5.

Defendant Abel Unlimited, Inc. is a corporation having a place of business at 1649 Forum Pl. Ste. 12, West Palm Beach, Florida 33401-2331. Abel Unlimited, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Abel Unlimited, Inc. has conducted business in the Northern District of Georgia. In its business, Abel Unlimited, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

6.

Defendant Action Team Medical is a corporation having a place of business at 212 Star of India Lane, Carson, California 90746-1418. Action Team Medical is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Action Team Medical has conducted business in the Northern District of Georgia. In its business, Action Team Medical has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

7.

Defendant Adenna, Inc. is a corporation having a place of business at 12216 McCann Drive, Santa Fe Springs, California 90670-3331. Adenna, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Adenna, Inc. has conducted business in the Northern District of Georgia. In its business, Adenna, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

8.

Defendant Aero-Med, Ltd. is a corporation having a place of business at 85 Commerce Street, Glastonbury, Connecticut 06033-2312. Aero-Med, Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Aero-Med, Ltd. has conducted business in the Northern District of Georgia. In its business, Aero-Med, Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

9.

Defendant Agio Group Inc. is a corporation having a place of business at 30021 Ahern Avenue, Union City, California 94587-1234. Agio Group Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Agio Group Inc. has conducted business in the Northern District of Georgia. In its business, Agio Group Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

10.

Defendant Akers Industries, Inc. is a corporation having a place of business at 75 Commerce Way, Dedham, Massachusetts, 02026. Akers Industries, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Akers Industries, Inc. has conducted business in the Northern District of Georgia. In its business, Akers Industries, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

11.

Defendant Alliance Rubber Products Sdn. Bhd. ("Alliance") is a Malaysian corporation having a place of business at Lot 2716 & 2720, MK 7, Kawasan Perindustrian Bukit Panchor, 14300 Nibong Tebal, Pulau Pinang, Malaysia. Alliance is engaged in the business of importing into the United States, making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Alliance has conducted business in the Northern District of Georgia. In its business, Alliance has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

12.

Defendant Almedic is a corporation having a place of business at 4900 Cote Vertu, Montreal, Quebec, Canada H4S 1J9. Almedic is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Almedic has conducted business in the Northern District of Georgia. In its business, Almedic has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

11

13.

Defendant Alpine Gloves, Inc. is a corporation having a place of business at 26 Saint Paul Lane, Laguna Niguel, California 92677-9373. Alpine Gloves, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Alpine Gloves, Inc. has conducted business in the Northern District of Georgia. In its business, Alpine Gloves, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

14.

Defendant American Healthcare Products, Inc. is a corporation having a place of business at 1068 Westminster Ave, Alhambra, California 91803-1231. American Healthcare Products, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, American Healthcare Products, Inc. has conducted business in the Northern District of Georgia. In its business, American Healthcare Products, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

15.

Defendant Ancin Inc. is a corporation having a place of business at 2691 Markham Road, Unit 26, Toronto, Ontario, Canada M1X 1L4. Ancin Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Ancin Inc. has conducted business in the Northern District of Georgia. In its business, Ancin Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

16.

Defendant APL Industries Bhd. is a corporation having a place of business at Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E. Malaysia. APL Industries Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, APL Industries Bhd. has conducted business in the Northern District of Georgia. In its business, APL Industries Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

17.

Defendant APL Products Sdn. Bhd. is a corporation having a place of business at Lot 8961 and 8964, Batu 19, Jalan Beruas, 31400 Ayer Tawar, Perak, Malaysia. APL Products Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, APL Products Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, APL Products Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

18.

Defendant Asia Dynamics, Inc. is a corporation having a place of business at 6153 West Mulford Street, Ste. D, Niles, Illinois. Asia Dynamics, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Asia Dynamics, Inc. has conducted business in the Northern District of Georgia. In its business, Asia Dynamics, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

19.

Defendant Asia Pacific Latex Sdn. Bhd. is a corporation having a place of business at Lot 12, Medan Tasek, Tesak Industrial Estate, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Asia Pacific Latex Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Asia Pacific Latex Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Asia Pacific Latex Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

20.

Defendant Asian Dynamics Group Inc. is a corporation having a place of business at 1565 S Shields Dr, Waukegan, Illinois  60085-8304. Asian Dynamics Group Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Asian Dynamics Group Inc. has conducted business in the Northern District of Georgia. In its business, Asian Dynamics Group Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

21.

Defendant Atlantis Plastics, Inc. is a corporation having a place of business at 2665 South Bayshore Drive, #800, Miami, Florida, 33133. Atlantis Plastics, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Atlantis Plastics, Inc. has conducted business in the Northern District of Georgia. In its business, Atlantis Plastics, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

22.

Defendant Audra Inc. is a corporation having a place of business at 21400 N. Shore Drive, Sturgis, Michigan 49091. Audra Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Audra Inc. has conducted business in the Northern District of Georgia. In its business, Audra Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

23.

Defendant Band-it Rubber Co. is a corporation having a place of business at 1711 Delilah Street, Corona, California 92879. Band-it Rubber Co. is

16

engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Band-it Rubber Co. has conducted business in the Northern District of Georgia. In its business, Band-it Rubber Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

24.

Defendant Basic Medical Industries Inc. is a corporation having a place of business at 12390 East End Avenue, Chino, California 91710. Basic Medical Industries Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Basic Medical Industries Inc. has conducted business in the Northern District of Georgia. In its business, Basic Medical Industries Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

25.

Defendant Bay Medical Co., Inc. is a corporation having a place of business at 400 Talbert St, Daly City, California 94014-1623. Bay Medical Co., Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Bay Medical

17

Co., Inc. has conducted business in the Northern District of Georgia. In its business, Bay Medical Co., Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

26.

Defendant Beijing Chemical Industry Group Rubber & Plastic Products Factory is a corporation having a place of business at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111. Beijing Chemical Industry Group Rubber & Plastic Products Factory is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Beijing Chemical Industry Group Rubber & Plastic Products Factory has conducted business in the Northern District of Georgia. In its business, Beijing Chemical Industry Group Rubber & Plastic Products Factory has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

27.

Defendant Beijing Huateng Rubber Plastic is a corporation having a place of business at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111. Beijing Huateng Rubber Plastic is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.

18

On information and belief, Beijing Huateng Rubber Plastic has conducted business in the Northern District of Georgia. In its business, Beijing Huateng Rubber Plastic has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

28.

Defendant Beijing Latex is a corporation having a place of business at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111. Beijing Latex is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Beijing Latex has conducted business in the Northern District of Georgia. In its business, Beijing Latex has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

29.

Defendant Beijing Reagent Latex Products Co., Ltd. is a corporation having a place of business at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111. Beijing Reagent Latex Products Co., Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Beijing Reagent Latex Products

19

Co., Ltd. has conducted business in the Northern District of Georgia. In its business, Beijing Reagent Latex Products Co., Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

30.

Defendant Beijing Rubber & Plastic Products Factory is a corporation having a place of business at Ciqu Industrial Zone, Tongzhou District, Beijing, China 101111. Beijing Rubber & Plastic Products Factory is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Beijing Rubber & Plastic Products Factory has conducted business in the Northern District of Georgia. In its business, Beijing Rubber & Plastic Products Factory has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

31.

Defendant Besglove Medicare Sdn. Bhd. is a corporation having a place of business at Lot 6 Bangi Industrial Estate, Jalan P/2A 43000 Bandar Baru Bangi, Selangor D.E., Malaysia. Besglove Medicare Sdn. Bhd is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Besglove Medicare Sdn. Bhd

20

has conducted business in the Northern District of Georgia. In its business, Besglove Medicare Sdn. Bhd has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

32.

Defendant Best Tex International Inc. is a corporation having a place of business at 2079 S. Atlantic Blvd., Ste E, Monterey Park, California 91754. Best Tex International Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Best Tex International Inc. has conducted business in the Northern District of Georgia. In its business, Best Tex International Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

33.

Defendant Bio-Flex International, Inc. is a corporation having a place of business at 1250 E. Hallandale Beach Blvd., Hallandale, Florida 33009. Bio-Flex International, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Bio-Flex International, Inc. has conducted business in the Northern District of Georgia. In its business, Bio-Flex International, Inc. has committed

21

tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

34.

Defendant Boss Manufacturing Co., Inc. is a corporation having a place of business at 221 W 1st St, Kewanee, Illinois 61443-2101. Boss Manufacturing Co., Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Boss Manufacturing Co., Inc. has conducted business in the Northern District of Georgia. In its business, Boss Manufacturing Co., Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

35.

Defendant Bowers Medical Supply Co. is a corporation having a place of business at 3691 Viking Way, Richmond, British Columbia, Canada. Bowers Medical Supply Co. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Bowers Medical Supply Co. has conducted business in the Northern District of Georgia. In its business, Bowers Medical Supply Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

36.

Defendant Boyd Medical & Safety Supplies, Inc. is a corporation having a place of business at 9837 W 69th St., Eden Prairie, Minnesota 55344. Boyd Medical & Safety Supplies, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Boyd Medical & Safety Supplies, Inc. has conducted business in the Northern District of Georgia. In its business, Boyd Medical & Safety Supplies, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

37.

Defendant Bright Element Sdn. Bhd. is a corporation having a place of business at No. 5, Jalan USJ 3B/2, Subang Jaya, 47610 Selangor D. E., Malaysia. Bright Element Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Bright Element Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Bright Element Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

38.

Defendant Brightway Holding Sdn. Bhd. is a corporation having a place of business at Lot 1559, Jalan Istimewa, Bt. Belah, 42100 Klang, Selangor Darul Ehsan, Malaysia. Brightway Holding Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Brightway Holding Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Brightway Holding Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

39.

Defendant Brightness Corp. is a corporation having a place of business at 22F-2, NO. 698, Sec 4, Wen Shin Rd., Taichung 406, Taiwan. Brightness Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Brightness Corp. has conducted business in the Northern District of Georgia. In its business, Brightness Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

40.

Defendant Carmichael International Service is a corporation having a place of business at 533 Glendale Boulevard, Los Angeles, California 90026. Carmichael International Service is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Carmichael International Service has conducted business in the Northern District of Georgia. In its business, Carmichael International Service has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

41.

Defendant Chemsource International Inc. is a corporation having a place of business at 2280 Turner N.W., Grand Rapids, MI 49544. Chemsource International Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Chemsource International Inc. has conducted business in the Northern District of Georgia. In its business, Chemsource International Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

42.

Defendant Chemtech International, LLC is a corporation having a place of business at 12 Nettlesworth Way NE, Grand Rapids, Michigan, 49546. Chemtech International, LLC is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Chemtech International, LLC has conducted business in the Northern District of Georgia. In its business, Chemtech International, LLC has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

43.

Defendant Clinical Supply Co. is a corporation having a place of business at 52 E Gay Street, Columbus, Ohio, 43215. Clinical Supply Co. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Clinical Supply Co. has conducted business in the Northern District of Georgia. In its business, Clinical Supply Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

44.

Defendant Coast Scientific Inc. is a corporation having a place of business at 1445 Engineer Street, San Diego, California. Coast Scientific Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Coast Scientific Inc. has conducted business in the Northern District of Georgia. In its business, Coast Scientific Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

45.

Defendant Colonial Surgical Supply, Inc. is a corporation having a place of business at 1812 1/2 North Vermont Avenue, Los Angeles, California; 90027. Colonial Surgical Supply, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Colonial Surgical Supply, Inc. has conducted business in the Northern District of Georgia. In its business, Colonial Surgical Supply, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

46.

Defendant Continental Lab Products is a corporation having a place of business at 610 Cornerstone Court, Suite 220, San Diego, CA 92121. Continental Lab Products is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Continental Lab Products has conducted business in the Northern District of Georgia. In its business, Continental Lab Products has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

47.

Defendant Contract Latex Dippers Sdn. Bhd. is a corporation having a place of business at Suite B-09-04, Plaza Mont Kiara 2, Jalan Kiara, 50480, Kuala Lumpur, Malaysia. Contract Latex Dippers Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Contract Latex Dippers Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Contract Latex Dippers Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

48.

Defendant Cranberry (M) Sdn. Bhd. is a corporation having a place of business at Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Cranberry (M) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Cranberry (M) Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Cranberry (M) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

49.

Defendant Cranberry USA, Inc. is a corporation having a place of business at 140 Dodd Court, American Canyon, CA 94503. Cranberry USA, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Cranberry USA, Inc. has conducted business in the Northern District of Georgia. In its business, Cranberry USA, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

29

50.

Defendant Cross Pacific Enterprise Co., Ltd. is a corporation having a place of business at Room 1305 Singular Building No. 320 Xianxia Road Changning District Shanghai P.R. China. Cross Pacific Enterprise Co., Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Cross Pacific Enterprise Co., Ltd. has conducted business in the Northern District of Georgia. In its business, Cross Pacific Enterprise Co., Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

51.

Defendant Crosstex International, Inc. is a corporation having a place of business at 10 Ranick Road, Hauppauge, New York 11788. Crosstex International, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Crosstex International, Inc. has conducted business in the Northern District of Georgia. In its business, Crosstex International, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

52.

Defendant CT International is a corporation having a place of business at 4340 Santa Fe Road, San Luis Obispo, California, 93401. CT International is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, CT International has conducted business in the Northern District of Georgia. In its business, CT International has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

53.

Defendant Dash Medical Gloves, Inc. is a corporation having a place of business at 1018 South 54th Street, Franklin, WI 53132. It may be served through its registered agent, Robert J. Sullivan, at 1018 South 54th St., Franklin, WI, 53132. Dash Medical Gloves, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Dash Medical Gloves, Inc. has conducted business in the Northern District of Georgia. In its business, Dash Medical Gloves, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

54.

Defendant Delta Medical Supply Group, Inc. d/b/a/ The Delta Group is a corporation having a place of business at 436 West Gay Street, West Chester PA 19380. Delta Medical Supply Group, Inc. d/b/a/ The Delta Group is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Delta Medical Supply Group, Inc. d/b/a/ The Delta Group has conducted business in the Northern District of Georgia. In its business, Delta Medical Supply Group, Inc. d/b/a/ The Delta Group has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

55.

Defendant Dentexx / First Medical Infection Control Association is a corporation having a place of business at 3704 Boren Dr., Greensboro, North Carolina 27407-2379. Dentexx / First Medical Infection Control Association is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Dentexx / First Medical Infection Control Association has conducted business in the Northern District of Georgia. In its business, Dentexx / First Medical Infection Control Association has committed tortious acts, including, without limitation,

32

patent infringement within the Northern District of Georgia, as is more fully set forth herein.

56.

Defendant Dermatec Direct is a corporation having a place of business at 4430 Adamo Drive, Suite 306, Tampa, FL 33605. Dermatec Direct is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Dermatec Direct has conducted business in the Northern District of Georgia. In its business, Dermatec Direct has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

57.

Defendant Designer Care Co., Ltd. is a corporation having a place of business at 474 Main Avenue, Neeche, ND 58265. Designer Care Co., Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Designer Care Co., Ltd. has conducted business in the Northern District of Georgia. In its business, Designer Care Co., Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

58.

Defendant Digitcare Corp. is a corporation having a place of business at 2999 Overland Avenue, Suite 209, Los Angeles, CA 90064. Digitcare Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Digitcare Corp. has conducted business in the Northern District of Georgia. In its business, Digitcare Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

59.

Defendant Durasafe, Inc. is a corporation having a place of business at No. 17 Hai Bin No. 7 Rd., Tinajin Port Free Trade Zone, Tianjin, 300456 China. Its California address is 18400 San Jose Ave., City of Industry, CA 91748. Durasafe, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Durasafe, Inc. has conducted business in the Northern District of Georgia. In its business, Durasafe, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

60.

Defendant Dynarex Corp. is a corporation having a place of business at 10 Glenshaw Street, Orangeburg, NY 10962. Dynarex Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Dynarex Corp. has conducted business in the Northern District of Georgia. In its business, Dynarex Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

61.

Defendant Econ Disposable Supplies, Inc. is a corporation having a place of business at 16810 Barker Springs #219, Houston, Texas, 77084. Econ Disposable Supplies, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Econ Disposable Supplies, Inc. has conducted business in the Northern District of Georgia. In its business, Econ Disposable Supplies, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

62.

Defendant Essential Cares is a corporation having a place of business at 795 E. Washington Boulevard, Los Angeles, California, 90021-3043.

Essential Cares is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Essential Cares has conducted business in the Northern District of Georgia.  In its business, Essential Cares has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

63.

Defendant Expeditors International of Washington is a corporation having a place of business at 1015 Third Avenue, 12th Floor, Seattle, Washington 98104.  Expeditors International of Washington is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Expeditors International of Washington has conducted business in the Northern District of Georgia.  In its business, Expeditors International of Washington has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

64.

Defendant Firstline LLC is a corporation having a place of business at 760 McMurray Road, Buellton, CA  93427.  Firstline LLC is engaged in the business of making, using, offering for sale, and selling hand gloves made from

36

elastomeric materials.  On information and belief, Firstline LLC has conducted business in the Northern District of Georgia.  In its business, Firstline LLC has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

65.

Defendant Genuine Glove is a corporation having a place of business at 9702 Bolsa Ave. Spc. 70, Westminster, California 92683.  Genuine Glove is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Genuine Glove has conducted business in the Northern District of Georgia.  In its business, Genuine Glove has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

66.

Defendant Global Imports USA is a corporation having a place of business at The Corporation, 140 Park Lane, Monsey, New York 10952.  Global Imports USA is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Global Imports USA has conducted business in the Northern District of Georgia. In its business, Global Imports USA has committed tortious acts, including,

37

without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

67.

Defendant Globe Shamrock, Inc. is a corporation having a place of business at 4930 Campbell Road, Houston, TX 77041. Globe Shamrock, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Globe Shamrock, Inc. has conducted business in the Northern District of Georgia. In its business, Globe Shamrock, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

68.

Defendant Glovco (M) Sdn. Bhd. is a corporation having a place of business at Lot 760, Jalan Haji Sirat, Off Jalan Meru Klang, 42100, Selangor D.E., Malaysia. Glovco (M) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Glovco (M) Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Glovco (M) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

69.

Defendant Glove Center is a corporation having a place of business at 145 Boniface, East Rochester, New York 14445. Glove Center is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Glove Center has conducted business in the Northern District of Georgia. In its business, Glove Center has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

70.

Defendant Glove Source, Inc. is a corporation having a place of business at 889 South Azusa Ave., City of Industry, CA 91748. Glove Source, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Glove Source, Inc. has conducted business in the Northern District of Georgia. In its business, Glove Source, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

71.

Defendant Glove USA, Inc. is a corporation having a place of business at 404 Windsor Manor Ct. Duluth, Georgia 30097. Glove USA, Inc. is

engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Glove USA, Inc. has conducted business in the Northern District of Georgia. In its business, Glove USA, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

72.

Defendant Golden Pacific Healthcare Products, Inc. is a corporation having a place of business at 17932 Star of India Lane, Carson, California 907476. Golden Pacific Healthcare Products, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Golden Pacific Healthcare Products, Inc. has conducted business in the Northern District of Georgia. In its business, Golden Pacific Healthcare Products, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

73.

Defendant Goldmax Industries, Inc. is a corporation having a place of business at 17747 Railroad St., City of Industry, California 91748-1111. Goldmax Industries, Inc. is engaged in the business of making, using, offering for

sale, and selling hand gloves made from elastomeric materials. On information and belief, Goldmax Industries, Inc. has conducted business in the Northern District of Georgia. In its business, Goldmax Industries, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

74.

Defendant Great Glove (USA) Inc. is a corporation having a place of business at 1026 S. Marengo Ave, Number 5, Alhambra, CA 91803. Great Glove (USA) Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Great Glove (USA) Inc. has conducted business in the Northern District of Georgia. In its business, Great Glove (USA) Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

75.

Defendant Great Glove Sdn. Bhd. is a corporation having a place of business at Lot 5091, Jalan Teratai, Batu 5, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia. Great Glove Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Great Glove Sdn. Bhd. has conducted business in the

Northern District of Georgia.   In its business, Great Glove Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

76.

Defendant Green Prospect Sdn. Bhd. is a corporation having a place of business at Lot 14803 Kawasan Perinustrian, Kampung Acheh, 32000 Sitiawan, Lumut Perak, Malaysia.   Green Prospect Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.   On information and belief, Green Prospect Sdn. Bhd. has conducted business in the Northern District of Georgia.   In its business, Green Prospect Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

77.

Defendant GX Corporation Sdn. Bhd. is a corporation having a place of business at Lot 6487, Batu 5 ¾, Sementa, Jalan Kapar, Klang, 42100 Selangor D.E., Malaysia.   GX Corporation Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, GX Corporation Sdn. Bhd. has conducted business in the Northern District of Georgia.   In its business, GX Corporation Sdn. Bhd. has

committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

78.

Defendant H & L International, Inc. is a corporation having a place of business at 3130 Diablo Ave 3132, Hayward, California 94545-2702. H & L International, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, H & L International, Inc. has conducted business in the Northern District of Georgia. In its business, H & L International, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

79.

Defendant Handgards, Inc. is a corporation having a place of business at 901 Hawkins Blvd., El Paso, Texas 79915. Handgards, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Handgards, Inc. has conducted business in the Northern District of Georgia. In its business, Handgards, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

80.

Defendant Hartalega Holdings Bhd. is a corporation having a place of business at Lot 9, Jalan Kuang Bulan, Taman Kepong Industrial Estate, 52100 Kuala Lumpur, Malaysia. Hartalega Holdings Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Hartalega Holdings Bhd. has conducted business in the Northern District of Georgia. In its business, Hartalega Holdings Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

81.

Defendant Hartalega Sdn. Bhd. is a corporation having a place of business at Lot 9, Jalan Kuang Bulan, Taman Kepong Industrial Estate, 52100 Kuala Lumpur, Malaysia. Hartalega Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Hartalega Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Hartalega Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

82.

Defendant Hourglass Industries, Inc. is a corporation having a place of business at 5739 Observation CT # 120, Colorado Springs, Colorado 80916. Hourglass Industries, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Hourglass Industries, Inc. has conducted business in the Northern District of Georgia. In its business, Hourglass Industries, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

83.

Defendant Ideal Healthcare Group Co. Ltd. is a corporation having a place of business at Bldg. 18, No. 1, South Section of Huacheng (W) Road, Ningbo, China 31500. Ideal Healthcare Group Co. Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Ideal Healthcare Group Co. Ltd. has conducted business in the Northern District of Georgia. In its business, Ideal Healthcare Group Co. Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

84.

Defendant Ideal Medical Industries Co., Ltd. is a corporation having a place of business at Block 18, Baiyunshanzhuang, 1 # Huancheng W. Road, South End, Ningbo, China 315000. Defendant Ideal Medical Industries Co., Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Defendant Ideal Medical Industries Co., Ltd. has conducted business in the Northern District of Georgia. In its business, Defendant Ideal Medical Industries Co., Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

85.

Defendant IMS, Inc. is a corporation having a place of business at 9238 S. Sheridan Rd., Suite 202, Tulsa, Oklahoma 74133. IMS, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, IMS, Inc. has conducted business in the Northern District of Georgia. In its business, IMS, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

86.

Defendant Indorama Group Companies is a corporation having a place of business at Graha Irama, 17th Floor, JL. HR Rasuna Said Blok X-1 Kav 1-2, Jakarta, 12950 Indonesia. Indorama Group Companies is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Indorama Group Companies has conducted business in the Northern District of Georgia. In its business, Indorama Group Companies has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

87.

Defendant Innovative Healthcare Corp. is a corporation having a place of business at 8220 Charles Page Blvd., Sand Springs, Oklahoma 74063. Innovative Healthcare Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Innovative Healthcare Corp. has conducted business in the Northern District of Georgia. In its business, Innovative Healthcare Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

88.

Defendant Intco Industrial Co. Ltd. is a corporation having a place of business at 1036 South Pudong Road, Suite 1703, Shanghai, China 200120. Intco Industrial Co. Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Intco Industrial Co. Ltd. has conducted business in the Northern District of Georgia. In its business, Intco Industrial Co. Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

89.

Defendant Inter Orient Services is a corporation having a place of business at 1455 Monterey Pass Road, Suite 205, Monterey Park, California 91754. Inter Orient Services is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Inter Orient Services has conducted business in the Northern District of Georgia. In its business, Inter Orient Services has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

90.

Defendant Intermed Gloves is a corporation having a place of business at 7115 Belgold St. Ste. E, Houston, Texas 77066. Intermed Gloves is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Intermed Gloves has conducted business in the Northern District of Georgia. In its business, Intermed Gloves has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

91.

Defendant International Sourcing Co, Inc. is a corporation having a place of business at 45 Forest Hills Irene, Cordova, Tennessee 38018. International Sourcing Co, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, International Sourcing Co, Inc. has conducted business in the Northern District of Georgia. In its business, International Sourcing Co, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

92.

Defendant Interworld Network Int'l., Inc. is a corporation having a place of business at 48541 Warm Springs Blvd., Suite 509, Fremont, California 94539. Interworld Network Int'l., Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Interworld Network Int'l., Inc. has conducted business in the Northern District of Georgia. In its business, Interworld Network Int'l., Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

93.

Defendant Jabil Global Services, Inc. is a corporation having a place of business at 1200 S. Pine Island Rd., Plantation, Florida, 33324. Jabil Global Services, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Jabil Global Services, Inc. has conducted business in the Northern District of Georgia. In its business, Jabil Global Services, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

94.

Defendant JDA (Tianjin) Plastic Co. Ltd. is a corporation having a place of business at No. 17 Hai Bin No. 7 Rd, Tianjin Port Free Trade Zone, Tianjin, 300456, China. JDA (Tianjin) Plastic Co. Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, JDA (Tianjin) Plastic Co. Ltd. has conducted business in the Northern District of Georgia. In its business, JDA (Tianjin) Plastic Co. Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

95.

Defendant JDA International, Inc. is a corporation having a place of business at 301 Brea Canyon Road, Walnut, CA 391789. JDA International, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, JDA International, Inc. has conducted business in the Northern District of Georgia. In its business, JDA International, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

96.

Defendant JXJ Labs Inc. is a corporation having a place of business at 19C Louis Avenue, Albany, New York 12204.  JXJ Labs Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, JXJ Labs Inc. has conducted business in the Northern District of Georgia.  In its business, JXJ Labs Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

97.

Defendant Kemco Supply of Washington Inc. is a corporation having a place of business at 20733 SE 4th St., Sammamish, Washington 98074. Kemco Supply of Washington Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Kemco Supply of Washington Inc. has conducted business in the Northern District of Georgia.  In its business, Kemco Supply of Washington Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

98.

Defendant Kossan Gloves, Inc. d/b/a Sintex is a corporation having a place of business at 16810 Baker Springs #219, Houston, Texas 77084  Kossan Gloves, Inc. d/b/a Sintex is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.   On information and belief, Kossan Gloves, Inc. d/b/a Sintex has conducted business in the Northern District of Georgia.  In its business, Kossan Gloves, Inc. d/b/a Sintex has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

99.

Defendant Kossan Holdings (M) Sdn. Bhd. is a corporation having a place of business at Lot 16632, Batu 5 ¼ , Jalan Meru, 41050 Klang, Selangor D.E., Malaysia.  Kossan Holdings (M) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Kossan Holdings (M) Sdn. Bhd. has conducted business in the Northern District of Georgia.   In its business, Kossan Holdings (M) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

100.

Defendant Kossan Latex Industries (M) Sdn. Bhd. is a corporation having a place of business at Lot 16632, Batu 5 ¼, Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Kossan Latex Industries (M) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Kossan Latex Industries (M) Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Kossan Latex Industries (M) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

101.

Defendant Kossan Rubber Industries Bhd. is a corporation having a place of business at Lot 16632, Batu 5 ¼ , Jalan Meru, 41050 Klang, Selangor D.E., Malaysia. Kossan Rubber Industries Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Kossan Rubber Industries Bhd. has conducted business in the Northern District of Georgia. In its business, Kossan Rubber Industries Bhd. has committed tortious acts, including, without limitation, patent

infringement within the Northern District of Georgia, as is more fully set forth herein.

102.

Defendant Laglove (M) Sdn. Bhd. is a corporation having a place of business at Lot 478, Jalan Simpang Balak, Off B, 43000 Kajang Selangor, Malaysia. Laglove (M) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Laglove (M) Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Laglove (M) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

103.

Defendant LDF Industries, Inc. is a corporation having a place of business at Hygrade, 30 Warsoff Place, Brooklyn, New York 11205. LDF Industries, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, LDF Industries, Inc. has conducted business in the Northern District of Georgia. In its business, LDF Industries, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

104.

Defendant Li An Safety Products Corp. is a corporation having a place of business at Suite 5301, Building A, No. 808, Hong Quiao Road, Shanghai, China 64475443. Li An Safety Products Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Li An Safety Products Corp. has conducted business in the Northern District of Georgia. In its business, Li An Safety Products Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

105.

Defendant Liberty Glove and Safety Co. is a corporation having a place of business at 33 Cheryl Lane City of Industry, California 91789. Liberty Glove and Safety Co. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Liberty Glove and Safety Co. has conducted business in the Northern District of Georgia. In its business, Liberty Glove and Safety Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

106.

Life Science Products is a corporation having a place of business at 115 S. Lynchburg St., Chestertown, Maryland 21620. Life Science Products is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Life Science Products has conducted business in the Northern District of Georgia. In its business, Life Science Products has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

107.

Defendant Lifetime Glove Co., Inc. is a corporation having a place of business at 801 Vanderbraak St., Green Bay, WI 54302-1140. Lifetime Glove Co., Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Lifetime Glove Co., Inc. has conducted business in the Northern District of Georgia. In its business, Lifetime Glove Co., Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

108.

Defendant Lowrie & Company Medical Resources, Inc., is a corporation having a place of business at 140 Ambrogio Dr., Gurnee, Illinois 60031. Lowrie & Company Medical Resources, Inc., is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Lowrie & Company Medical Resources, Inc., has conducted business in the Northern District of Georgia. In its business, Lowrie & Company Medical Resources, Inc., has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

109.

Defendant Malaytex Products, Sdn. Bhd. is a corporation having a place of business at Lots 67/8 Lotonr Senawang 4/1, Senowang Industrial Area, Serem Ban, N. Bembilan, Malaysia 70450. Malaytex Products, Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Malaytex Products, Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Malaytex Products, Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

110.

Defendant Malaytex Products USA, Inc. d/b/a Pro2 Solutions, Inc. is a corporation having a place of business at 140 Dodd Court, American Canyon, California 94503.   Malaytex Products USA, Inc. d/b/a Pro2 Solutions, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Malaytex Products USA, Inc. d/b/a Pro2 Solutions, Inc. has conducted business in the Northern District of Georgia.  In its business, Malaytex Products USA, Inc. d/b/a Pro2 Solutions, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

111.

Defendant Mayer Laboratories Inc. is a corporation having a place of business at 1950 Addison St Ste 101, Berkeley, California 94704.   Mayer Laboratories Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Mayer Laboratories Inc. has conducted business in the Northern District of Georgia.  In its business, Mayer Laboratories Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

112.

Defendant Maytex Corporation is a corporation having a place of business at 23521 Foley St., Hayward, California 94545. Maytex Corporation is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Maytex Corporation has conducted business in the Northern District of Georgia. In its business, Maytex Corporation has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

113.

Defendant McCordick Glove & Safety Inc. is a corporation having a place of business at 899 Eaton Avenue, Bethlehem, Pennsylvania 18025-1000. McCordick Glove & Safety Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, McCordick Glove & Safety Inc. has conducted business in the Northern District of Georgia. In its business, McCordick Glove & Safety Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

114.

Defendant Med Express is a corporation having a place of business at Suite 2C, 135 W. Ravine Road, Kingsport, Tennessee 37660. Med Express is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Med Express has conducted business in the Northern District of Georgia. In its business, Med Express has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

115.

Defendant Medco Supply Co. is a corporation having a place of business at 500 Fillmore Avenue, Tonawanda, New York 14150. Medco Supply Co. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Medco Supply Co. has conducted business in the Northern District of Georgia. In its business, Medco Supply Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

116.

Defendant Medgluv Inc. is a corporation having a place of business at 4720 NW 15th Ave, Suite B-4, Fort Lauderdale, Florida 33309. Medgluv Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Medgluv Inc. has conducted business in the Northern District of Georgia. In its business, Medgluv Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

117.

Defendant Medical Safety Supply is a corporation having a place of business at 17101 South Central Ave, Ste 1D, Carson, California 90746-1359. Medical Safety Supply is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Medical Safety Supply has conducted business in the Northern District of Georgia. In its business, Medical Safety Supply has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

118.

Defendant Medi-Flex Unlimited d/b/a Flexitech Sdn. Bhd. is a corporation having a place of business at Lot 5071, Jalan Teratai, Batu 5 1/2, Off Jalan Meru, 41050 Klang, Selangor D. E., Malaysia and Lot 124 & 126.  Medi-Flex Unlimited d/b/a Flexitech Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Medi-Flex Unlimited d/b/a Flexitech Sdn. Bhd. has conducted business in the Northern District of Georgia.  In its business, Medi-Flex Unlimited d/b/a Flexitech Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

119.

Defendant Medisafe Technologies (USA) is a corporation having a place of business at 155 Harbor Way, Ann Arbor, MI 48103.  Medisafe Technologies (USA) is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Medisafe Technologies (USA) has conducted business in the Northern District of Georgia.  In its business, Medisafe Technologies (USA) has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

120.

Defendant Medtexx Partners Inc. is a corporation having a place of business at 30 Trinity Street, Hartford, Connecticut 06106. Medtexx Partners Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Medtexx Partners Inc. has conducted business in the Northern District of Georgia. In its business, Medtexx Partners Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

121.

Defendant Metron Technology Corporation is a corporation having a place of business at 655 River Oaks Pkwy., San Jose, California 95134-1907. Metron Technology Corporation is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Metron Technology Corporation has conducted business in the Northern District of Georgia. In its business, Metron Technology Corporation has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

122.

Defendant Metro-Pacifica LLC is a corporation having a place of business at 200 Chamberlin Street, Nashville, Tennessee 37209-4850. Metro-Pacifica LLC is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Metro-Pacifica LLC has conducted business in the Northern District of Georgia. In its business, Metro-Pacifica LLC has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

123.

Defendant Mexpo International, Inc. is a corporation having a place of business at 2671 McCone Ave, Hayward, California 94545. Mexpo International, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Mexpo International, Inc. has conducted business in the Northern District of Georgia. In its business, Mexpo International, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

124.

Defendant Midavol Protective Products is a corporation having a place of business at 18 Hidden Hills Drive, Greenville, South Carolina 29605-3250. Midavol Protective Products is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Midavol Protective Products has conducted business in the Northern District of Georgia. In its business, Midavol Protective Products has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

125.

Defendant Multisafe Sdn. Bhd. is a corporation having a place of business at Lot 764, Bidor Industrial Estate, 35500, Bidor, Perak Darul Ridzu, Malaysia. Multisafe Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Multisafe Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Multisafe Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

126.

Defendant Mydent International Corp. is a corporation having a place of business at 80 Suffolk Court, Ste. 3, Hauppauge, New York 11788-3745. Mydent International Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Mydent International Corp. has conducted business in the Northern District of Georgia. In its business, Mydent International Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

127.

Defendant Ningbo Tianshun Rubber Products Co. is a corporation having a place of business at A15k2, No. 168, Baizhang Road, Ningbo, Zhejiang, China 315000. Ningbo Tianshun Rubber Products Co. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Ningbo Tianshun Rubber Products Co. has conducted business in the Northern District of Georgia. In its business, Ningbo Tianshun Rubber Products Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

128.

Defendant Nitritex, Ltd. is a corporation having a place of business at 12216 McCann Drive, Santa Fe Springs, California 90670.  Nitritex, Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Nitritex, Ltd. has conducted business in the Northern District of Georgia.  In its business, Nitritex, Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

129.

Defendant Normandin Pacific Holdings Corp. d/b/a/ Pacifica is a corporation having a mailing address at Post Office Box 2709, Torrance, California 90509-2809, and has a distribution center at 16963 S. Central Avenue, Carson, California 90746. Normandin Pacific Holdings Corp. d/b/a/ Pacifica is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Normandin Pacific Holdings Corp. d/b/a/ Pacifica has conducted business in the Northern District of Georgia.  In its business, Normandin Pacific Holdings Corp. d/b/a/ Pacifica has committed tortious acts, including, without limitation, patent

infringement within the Northern District of Georgia, as is more fully set forth herein.

130.

Defendant Norpak Inc. is a corporation having a place of business at 202 Fashion Lane, Ste. 201, Tustin, California 92780-3341. Norpak Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Norpak Inc. has conducted business in the Northern District of Georgia. In its business, Norpak Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

131.

Defendant North Safety Products, Inc. is a corporation having a place of business at 2000 Plainfield Pike, Cranston, Rhode Island 02921-2012. North Safety Products, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, North Safety Products, Inc. has conducted business in the Northern District of Georgia. In its business, North Safety Products, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

132.

Defendant Northern Safety Co, Inc. is a corporation having a place of business at 232 Industrial Park Dr, Frankfort, New York 13340-4748. Northern Safety Co, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Northern Safety Co, Inc. has conducted business in the Northern District of Georgia. In its business, Northern Safety Co, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

133.

Defendant Oak Technical, LLC is a corporation having a place of business at 208 Industrial Blvd., Tullahoma, Tennessee 37388. Oak Technical, LLC is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Oak Technical, LLC has conducted business in the Northern District of Georgia. In its business, Oak Technical, LLC has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

134.

Defendant Pacewell USA Inc. is a corporation having a place of business at 2040 Afton Street, Houston, Texas 77055-2206. Pacewell USA Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Pacewell USA Inc. has conducted business in the Northern District of Georgia. In its business, Pacewell USA Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

135.

Defendant Pac-kem Value Medical Supply is a corporation having a place of business at 6700 Woodlands Pkwy., Ste. 230, Spring, Texas 77382. Pac-kem Value Medical Supply is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Pac-kem Value Medical Supply has conducted business in the Northern District of Georgia. In its business, Pac-kem Value Medical Supply has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

136.

Defendant PDQ Trading Co. Inc., is a corporation having a place of business at 1511 East 11th Avenue, Hialeah, Florida 33010-3308. PDQ Trading Co. Inc., is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, PDQ Trading Co. Inc., has conducted business in the Northern District of Georgia. In its business, PDQ Trading Co. Inc., has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

137.

Defendant Perfect Fit Glove is a corporation having a place of business at 2711 Centerville Road, Suite 400, Wilmington, DE 19808. Perfect Fit Glove is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Perfect Fit Glove has conducted business in the Northern District of Georgia. In its business, Perfect Fit Glove has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

138.

Defendant Perusahaan Getah Asas Sdn. Bhd. is a corporation having a place of business at Lot 754 Jalan Haji Sirat, Off Jalan Kapur, 42100 Klang, Sleangor, D.E. Malaysia. Perusahaan Getah Asas Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Perusahaan Getah Asas Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Perusahaan Getah Asas Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

139.

Defendant Pharmatex USA Inc. is a corporation having a place of business at 77530 Enfield Lane, Bldg 1, Palm Desert, California 92211. Pharmatex USA Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Pharmatex USA Inc. has conducted business in the Northern District of Georgia. In its business, Pharmatex USA Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

140.

Defendant PM Gloves USA Inc. is a corporation having a place of business at 13808 Magnolia Avenue # 12, Chino, California 91710-7027. PM Gloves USA Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, PM Gloves USA Inc. has conducted business in the Northern District of Georgia. In its business, PM Gloves USA Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

141.

Defendant Preventive Care Inc. is a corporation having a place of business at 15215 Boulder Avenue, Rosemount, MN 55068-3556. Preventive Care Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Preventive Care Inc. has conducted business in the Northern District of Georgia. In its business, Preventive Care Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

142.

Defendant Primary Products is a corporation having a place of business at 1891 Buerkle Road, Saint Paul, Minnesota 55110-5246.   Primary Products is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Primary Products has conducted business in the Northern District of Georgia.  In its business, Primary Products has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

143.

Defendant Product Club Inc. is a corporation having a place of business at 41 Pine Street, Suite 15, Rockaway, New Jersey 07866.  Product Club Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.   On information and belief, Product Club Inc. has conducted business in the Northern District of Georgia.  In its business, Product Club Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

144.

Defendant Prosemedic S.A. is a corporation having a place of business at Calle Los Geranios, 362 Urb. San Gregorio, Lima, Peru 14. Prosemedic S.A. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Prosemedic S.A. has conducted business in the Northern District of Georgia. In its business, Prosemedic S.A. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

145.

Defendant Pro-Stat Inc. at 285 Pierce Street, Somerset, New Jersey 08873. Pro-Stat Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Pro-Stat Inc. has conducted business in the Northern District of Georgia. In its business, Pro-Stat Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

146.

Defendant Protective Industrial Products, Inc. is a corporation having a place of business at Northeastern Industrial Park, Building 4, P.O. Box

19, Guilderland Center, New York   12085.   It may be served through its

registered agent, Germaine Curtin, at 10715 Indian Village Dr., Alpharetta, GA

30022.  Protective Industrial Products, Inc. is engaged in the business of making,

using, offering for sale, and selling hand gloves made from elastomeric materials.

On information and belief, Protective Industrial Products, Inc. has conducted

business in the Northern District of Georgia.  In its business, Protective Industrial

Products, Inc. has committed tortious acts, including, without limitation, patent

infringement within the Northern District of Georgia, as is more fully set forth

herein.

147.

Defendant PSS World Medical, Inc. is a corporation having a place

of business at 4345 Southpoint Boulevard, Jacksonville, Florida 32216-6166.  PSS

World Medical, Inc. is engaged in the business of making, using, offering for sale,

and selling hand gloves made from elastomeric materials.  On information and

belief, PSS World Medical, Inc. has conducted business in the Northern District

of Georgia.  In its business, PSS World Medical, Inc. has committed tortious acts,

including, without limitation, patent infringement within the Northern District

of Georgia, as is more fully set forth herein.

148.

Defendant PT Haloni Jane is a corporation having a place of business at JL. Raya Serang KM 13.8 Cikupa Tangerang, Indonesia. PT Haloni Jane is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, PT Haloni Jane has conducted business in the Northern District of Georgia. In its business, PT Haloni Jane has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

149.

Defendant PT Maja Agung Latexindo is a corporation having a place of business at JL. Utama No. 98 Pujimulyo, Sunggal 20352 Deli Serdang Sumatera Utara, Indonesia. PT Maja Agung Latexindo is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, PT Maja Agung Latexindo has conducted business in the Northern District of Georgia. In its business, PT Maja Agung Latexindo has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

150.

Defendant PT Medisafe Technologies is a corporation having a place of business at JL. Batang Kuis, GG Tambak Rejo/PSR IX, Desa Buntu Bedimbar, Tanjung Morawa, Medan, Sumatera Utar, Indonesia.  PT Medisafe Technologies is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, PT Medisafe Technologies  has conducted business in the Northern District of Georgia.  In its business, PT Medisafe Technologies has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

151.

Defendant  PT  Shamrock  Manufacturing  Corporation  is  a corporation having a place of business at Jalan Pemuda No. 11, Medan- 20151 North Sumatra, Indonesia.  PT Shamrock Manufacturing Corporation is engaged in the business of making, using, offering for sale, and selling hand gloves made from  elastomeric  materials.    On  information  and  belief,  PT  Shamrock Manufacturing Corporation has conducted business in the Northern District of Georgia.    In  its  business,  PT  Shamrock  Manufacturing  Corporation  has committed  tortious  acts,  including,  without  limitation,  patent  infringement within the Northern District of Georgia, as is more fully set forth herein.

152.

Defendant PT Smart Glove Indonesia is a corporation having a place of business at JL, Raya Medan-Lubuk Pakam Km 19, Tanjong Morawa B, Tanjong Morawa, Deli Serdang, Sumatera Utara, Indonesia. PT Smart Glove Indonesia is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, PT Smart Glove Indonesia has conducted business in the Northern District of Georgia. In its business, PT Smart Glove Indonesia has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

153.

Defendant QRP, Inc. d/b/a QRP Gloves, Inc. is a corporation having a place of business at P.O. Box 28802 Tucson, Arizona 85726. It may be served through its registered agent, Daniel J. Quigley, 2730 E. Broadway #160, Tucson, AZ 85716. QRP, Inc. d/b/a QRP Gloves, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, QRP, Inc. d/b/a QRP Gloves, Inc. has conducted business in the Northern District of Georgia. In its business, QRP, Inc. d/b/a QRP Gloves, Inc. has committed tortious acts, including, without

limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

154.

Defendant Quantum Labs, Inc. is a corporation having a place of business at 422 5th Avenue, Madison, Minnesota 56256-1297. Quantum Labs, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Quantum Labs, Inc. has conducted business in the Northern District of Georgia. In its business, Quantum Labs, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

155.

Defendant Rampart International Inc. is a corporation having a place of business at 198 Avenue De La D'emerald, Sparks, Nevada 89434. Rampart International Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Rampart International Inc. has conducted business in the Northern District of Georgia. In its business, Rampart International Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

156.

Defendant Riverstone Resources Sdn. Bhd. is a corporation having a place of business at Lot 21909, No. 5, Loring Helang Hindik, Kepong Baru Industrial Estate, 52100 Kuala Lumpur, Malaysia.   Riverstone Resources Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.   On information and belief, Riverstone Resources Sdn. Bhd. has conducted business in the Northern District of Georgia.   In its business, Riverstone Resources Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

157.

Defendant RTS Supply is a corporation having a place of business at 1442 Arrow Hwy., Ste. M, Irwindale, California  91706-1341.  RTS Supply is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, RTS Supply has conducted business in the Northern District of Georgia.  In its business, RTS Supply has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

158.

Defendant Seal Polymer Industries Bhd. is a corporation having a place of business at Lot 72706, Jalan Lahat, Kawasan Perindustrian Buki Merah, 31500 Lahat, Perak, Malaysia. Seal Polymer Industries Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Seal Polymer Industries Bhd. has conducted business in the Northern District of Georgia. In its business, Seal Polymer Industries Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

159.

Defendant Seal Polymer Industries Sdn. Bhd. is a corporation having a place of business at Lot 72706, Jalan Lahat, Kawasan Perindustrian Buki Merah, 31500 Lahat, Perak, Malaysia. Seal Polymer Industries Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Seal Polymer Industries Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Seal Polymer Industries Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

83

160.

Defendant Seattle Glove, Inc. is a corporation having a place of business at 11524 Cyrus Way, Mukilteo, Washington 98275-5441. Seattle Glove, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Seattle Glove, Inc. has conducted business in the Northern District of Georgia. In its business, Seattle Glove, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

161.

Defendant Select Medical Products is a corporation having a place of business at 7000 South Sylvan Lake Drive, Sanford, Florida 32771. Select Medical Products is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Select Medical Products has conducted business in the Northern District of Georgia. In its business, Select Medical Products has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

162.

Defendant Select Medical Supply Inc. is a corporation having a place of business at 2040 Afton Street, Houston, Texas 77055-2206. Select Medical Supply Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Select Medical Supply Inc. has conducted business in the Northern District of Georgia. In its business, Select Medical Supply Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

163.

Defendant Sentry Medical Products is a corporation having a place of business at 795 Coronis Way, Green Bay, Wisconsin 54304. Sentry Medical Products is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Sentry Medical Products has conducted business in the Northern District of Georgia. In its business, Sentry Medical Products has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

164.

Defendant Shamrock Manufacturing Company, Inc. is a corporation having a place of business at 5445 Daniels Street, Chino, California 91710. Shamrock Manufacturing Company, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Shamrock Manufacturing Company, Inc. has conducted business in the Northern District of Georgia.   In its business, Shamrock Manufacturing Company, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

165.

Defendant Shamrock Marketing Company, Inc. is a corporation having a place of business at 5445 Daniels Street, Chino, California, 91710. Shamrock Marketing Company, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Shamrock Marketing Company, Inc. has conducted business in the Northern District of Georgia.   In its business, Shamrock Marketing Company, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

86

166.

Defendant Shanghai Champion Plastic Products Co., Ltd. is a corporation having a place of business at No. 8 New District Zhu Hang, Chen, Jinshan District, Shanghai, China. Shanghai Champion Plastic Products Co., Ltd is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Shanghai Champion Plastic Products Co., Ltd has conducted business in the Northern District of Georgia. In its business, Shanghai Champion Plastic Products Co., Ltd has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

167.

Defendant Shanghai Knitwear Import & Export is a corporation having a place of business at CFloor 14-16 Union Buiding No.100 Ya Shanghai, China. Shanghai Knitwear Import & Export is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Shanghai Knitwear Import & Export has conducted business in the Northern District of Georgia. In its business, Shanghai Knitwear Import & Export has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

168.

Defendant Sheen More Enterprise Co., Ltd. is a corporation having a place of business at No.16, Tou Kung Six Road, Tou-liu Expanded industrial Park Tou-Liu Yun-lin Taiwan. Sheen More Enterprise Co., Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Sheen More Enterprise Co., Ltd. has conducted business in the Northern District of Georgia. In its business, Sheen More Enterprise Co., Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

169.

Defendant Shepard Medical Product Inc. is a corporation having a place of business at 260 E Lies Rd., Carol Stream, Illinois 60188. Shepard Medical Product Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Shepard Medical Product Inc. has conducted business in the Northern District of Georgia. In its business, Shepard Medical Product Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

170.

Defendant Sierra Scientific, Inc. d/b/a Value-tek is a corporation having a place of business at 1146 E. Buckeye Rd., Phoenix, Arizona 85034-4043. Sierra Scientific, Inc. d/b/a Value-tek is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Sierra Scientific, Inc. d/b/a Value-tek has conducted business in the Northern District of Georgia. In its business, Sierra Scientific, Inc. d/b/a Value-tek has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

171.

Defendant Smart Glove Corporation Sdn. Bhd. is a corporation having a place of business at Lot 6487, Batu 5 ¾ Sementajln Kapar, 42100 Klang, Selangor D.E., Malaysia. Smart Glove Corporation Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Smart Glove Corporation Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Smart Glove Corporation Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

172.

Defendant Smart Glove Holdings Sdn. Bhd. is a corporation having a place of business at Lot 6487, Batu 5 ¾ Sementajln Kapar, 42100 Klang, Selangor D.E., Malaysia. Smart Glove Holdings Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Smart Glove Holdings Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Smart Glove Holdings Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

173.

Defendant Solid Wing Trading Corp. is a corporation having a place of business at 15261 Don Julian Road, City of Industry, California 91746. Solid Wing Trading Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Solid Wing Trading Corp. has conducted business in the Northern District of Georgia. In its business, Solid Wing Trading Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

174.

Defendant Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is a corporation having a place of business at 18400 San Jose Avenue, City of Industry, California 91748. Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. has conducted business in the Northern District of Georgia. In its business, Southern Pacific Coast Corporation d/b/a Life Guard Medical Supply, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

175.

Defendant Sri Johani Sdn. Bhd. is a corporation having a place of business at Lot PT 7178 Balakong New Village, Seri Kgmbangang 43300 Selangor D.E. Malaysia. Sri Johani Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Sri Johani Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Sri Johani Sdn. Bhd. has committed

tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

176.

Defendant SS White Burs Inc. is a corporation having a place of business at 153 First Ave., West Haven, Connecticut 06516. SS White Burs Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, SS White Burs Inc. has conducted business in the Northern District of Georgia. In its business, SS White Burs Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

177.

Defendant Sterigard is a corporation having a place of business at 5855 Naples Plaza, Rm. 101, Long Beach, California 90803. Sterigard is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Sterigard has conducted business in the Northern District of Georgia. In its business, Sterigard has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

178.

Defendant Strata Medical Inc. is a corporation having a place of business at 5962 La Place Court, Suite 100, Carlsbad, California 92008. Strata Medical Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Strata Medical Inc. has conducted business in the Northern District of Georgia. In its business, Strata Medical Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

179.

Defendant Superior Glove Works Ltd. is a corporation having a place of business at 60 Industrial Parkway, Cheektowaga, New York 14227. Superior Glove Works Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Superior Glove Works Ltd. has conducted business in the Northern District of Georgia. In its business, Superior Glove Works Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

180.

Defendant Supermax Corporation Bhd. is a corporation having a place of business at Lot 38, Putra Industrial Park, Bukit Tahman Putra, 47000 Sungai Buloh, Selangor D.E., Malaysia. Supermax Corporation Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Supermax Corporation Bhd. has conducted business in the Northern District of Georgia. In its business, Supermax Corporation Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

181.

Defendant Supermax Glove Industries Sdn. Bhd. is a corporation having a place of business at Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E. Malaysia. Supermax Glove Industries Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Supermax Glove Industries Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Supermax Glove Industries Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

182.

Defendant Supermax Glove Manufacturing Sdn. Bhd. is a corporation having a place of business at Lot 42, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E. Malaysia. Supermax Glove Manufacturing Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Supermax Glove Glove Manufacturing Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Supermax Glove Glove Manufacturing Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

183.

Defendant Supermax Latex Products Sdn. Bhd. is a corporation having a place of business at Lot 38, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E. Malaysia. Supermax Latex Products Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Supermax Latex Products Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Supermax Latex Products Sdn. Bhd. has

committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

184.

Defendant Supermax Sdn. Bhd. is a corporation having a place of business at Lot 42, Putra Industrial Park, Bukit Rahman Putra, 47000 Sungai Buloh, Selangor D.E. Malaysia. Supermax Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Supermax Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Supermax Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

185.

Defendant Supermax, Inc. d/b/a Aurelia Gloves is a corporation having a place of business at 2225 White Oak Circle, Aurora, Illinois 60504. Supermax, Inc. d/b/a Aurelia Gloves is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Supermax, Inc. d/b/a Aurelia Gloves has conducted business in the Northern District of Georgia. In its business, Supermax, Inc. d/b/a Aurelia Gloves has committed tortious acts, including, without limitation,

patent infringement within the Northern District of Georgia, as is more fully set forth herein.

186.

Defendant SyrVet, Inc. is a corporation having a place of business at 955 SE Olson Dr, Waukee, Iowa 50263. SyrVet, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, SyrVet, Inc. has conducted business in the Northern District of Georgia. In its business, SyrVet, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

187.

Defendant TechNiGlove International is a corporation having a place of business at 1280 Graphite Drive, Corona, California 92881. TechNiGlove International is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, TechNiGlove International has conducted business in the Northern District of Georgia. In its business, TechNiGlove International has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

188.

Defendant The Cameron and Barkeley Co. is a corporation having a place of business at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801. The Cameron and Barkeley Co. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, The Cameron and Barkeley Co. has conducted business in the Northern District of Georgia. In its business, The Cameron and Barkeley Co. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

189.

Defendant Tillotson Healthcare Corp. is a corporation having a place of business at 8025 South Willow Street, Manchester, NH 03103. Tillotson Healthcare Corp. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Tillotson Healthcare Corp. has conducted business in the Northern District of Georgia. In its business, Tillotson Healthcare Corp. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

190.

Defendant TNT Enterprise, Inc. is a corporation having a place of business at 30011 Ivy Glenn Dr., Ste 215, Laguna Niguel, California 92677. TNT Enterprise, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, TNT Enterprise, Inc. has conducted business in the Northern District of Georgia. In its business, TNT Enterprise, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

191.

Defendant Tronex International, Inc. is a corporation having a place of business at One Tronex Centre, 3 Luger Rd., Denville, New Jersey 07834. Tronex International, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Tronex International, Inc. has conducted business in the Northern District of Georgia. In its business, Tronex International, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

192.

Defendant United Delta, Inc. is a corporation having a place of business at 301 Brea Canyon Road, Walnut, California 91789. United Delta, Inc. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, United Delta, Inc. has conducted business in the Northern District of Georgia. In its business, United Delta, Inc. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

193.

Defendant Uti Pership (PVT) Ltd. is a corporation having a place of business at  No. 35 Edward Lane, Colombo 03 Sri Lanka. Uti Pership (PVT) Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Uti Pership (PVT) Ltd.  has conducted business in the Northern District of Georgia. In its business, Uti Pership (PVT) Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

194.

Defendant Universal X-ray Company Of Canada is a corporation having a place of business at 599-601 Orly, Dorval, Quebec, Canada  H9P 1G1. Universal X-ray Company Of Canada is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Universal X-ray Company Of Canada has conducted business in the Northern District of Georgia.  In its business, Universal X-ray Company Of Canada has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

195.

Defendant Wear Safe (M) Sdn. Bhd. is a corporation having a place of business at Lot 1, Leboh Hishamuddin Satu, North Klang Straits Ind. Area, 42000 Klang, Selangor D.E., Malaysia.  Wear Safe (M) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials.  On information and belief, Wear Safe (M) Sdn. Bhd. has conducted business in the Northern District of Georgia.  In its business, Wear Safe (M) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

196.

Defendant William A. McGinty Company is a corporation having a place of business at 2300 E Higgins Rd Ste 104, Elk Grove Village, Illinois 60007. William A. McGinty Company is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, William A. McGinty Company has conducted business in the Northern District of Georgia. In its business, William A. McGinty Company has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

197.

Defendant Yee Lee Corporation Bhd. is a corporation having a place of business at Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Yee Lee Corporation Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Yee Lee Corporation Bhd. has conducted business in the Northern District of Georgia. In its business, Yee Lee Corporation Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

198.

Defendant Yee Lee Holdings Sdn. Bhd. is a corporation having a place of business at Lot 85 Jalan Portland, Tasek Industrial Estates, 31400 Ipoh Perak Darul Ridzuan, Malaysia. Yee Lee Holdings Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Yee Lee Holdings Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, Yee Lee Holdings Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

199.

Defendant YTY Holdings Sdn. Bhd. is a corporation having a place of business at Lot 2935B, Kg Batu 9 Kebun Baru, Jalan Masjid, 42500 Telok Panglima Garang Kuala Kangat, Selangor D.E., Malaysia. YTY Holdings Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, YTY Holdings Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, YTY Holdings Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

200.

Defendant YTY Industry (Manjung) Sdn. Bhd. is a corporation having a place of business at Lot 1422-1424, Batu 10 Lekir, 32020 Sitiawan, Perak Darul Ridzuan, Malaysia. YTY Industry (Manjung) Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, YTY Industry (Manjung) Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, YTY Industry (Manjung) Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

201.

Defendant YTY Industry Sdn. Bhd. is a corporation having a place of business at Lot 2935B, Kg Batu 9 Kebun Baru, Jalan Masjid, 42500 Telok Panglima Garang Kuala Kangat, Selangor D.E., Malaysia. YTY Industry Sdn. Bhd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, YTY Industry Sdn. Bhd. has conducted business in the Northern District of Georgia. In its business, YTY Industry Sdn. Bhd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

202.

Defendant Yujiang Ideal Medical Industries Co., Ltd. is a corporation having a place of business at Economic & Tech Development, Zone G-4, Ningbo, Zhejiang Province, China 315803. Yujiang Ideal Medical Industries Co., Ltd. is engaged in the business of making, using, offering for sale, and selling hand gloves made from elastomeric materials. On information and belief, Yujiang Ideal Medical Industries Co., Ltd. has conducted business in the Northern District of Georgia. In its business, Yujiang Ideal Medical Industries Co., Ltd. has committed tortious acts, including, without limitation, patent infringement within the Northern District of Georgia, as is more fully set forth herein.

## JURISDICTION AND VENUE

203.

This is an action for injunctive relief, damages, treble damages, interest, costs, and an award for attorney fees for Defendants' violations of the Patent Laws of the United States, Title 35 of the United States Code. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1332, and 1338.

204.

Venue is proper in this Court under the provisions of 28 U.S.C. § 1391 and § 1400(b).

## FACTS COMMON TO ALL COUNTS

205.

Neil E. Tillotson and Luc G. DeBecker (hereinafter "the inventors") have been involved in making, using, offering for sale, and selling hand gloves made from elastomeric materials for many years. Before May 11, 1990, the inventors conceived of a new and unobvious invention pertaining to hand gloves made from elastomeric materials.

206.

The inventors filed a patent application on May 11, 1990, directed to their invention. On May 14, 1991, United States Patent No. 5,014,362 was duly and legally issued for an invention titled "Elastomeric Covering Material and Hand Glove Made Therewith."

207.

On November 13, 1995, the inventors filed an application for the reissue of United States Patent No. 5,014,362. On September 30, 1997, United States Reissue Patent No. Re. 35,616 (hereinafter "'616 Patent") was duly and legally issued for an invention titled "Elastomeric Covering Material and Hand

Glove Made Therewith." A copy of the '616 Patent is attached hereto as Exhibit 1.

208.

Hand gloves made from elastomeric materials in accordance with the '616 Patent are substantially impermeable to water vapor and liquid water, have a relatively high tensile strength, and conform to the shape of a hand when stretched to fit about the hand and then relax so that the pressure exerted on the hand is substantially reduced.

209.

By Assignment, the inventors assigned all right, title, and interest in and to the application that resulted in the '616 Patent to Tillotson. Tillotson remains the owner of the '616 Patent.

210.

Defendants have been and are currently making, using, offering for sale, and/or selling hand gloves made from elastomeric materials covered by one or more of the claims of the '616 Patent. Defendants have been and are currently making, using, offering for sale, and/or selling hand gloves made from elastomeric materials in Georgia and in the Northern District of Georgia. One or more claims of the '616 Patent covers the hand gloves made of elastomeric

107

materials that Defendants have made, used, offered for sale, and/or sold in Georgia and in the Northern District of Georgia.

211.

The hand gloves made from elastomeric materials made, used, offered for sale, and/or sold by Defendants are substantially impermeable to water vapor and liquid water, have a relatively high tensile strength, and conform to the shape of a hand when stretched to fit about the hand and then relax so that the pressure exerted on the hand is substantially reduced.

212.

Tillotson has not granted a license or any other right to Defendants to make, use, offer for sale, or sell the invention defined by the claims of the '616 Patent.

213.

Tillotson has placed the required statutory notice on substantially all hand gloves made from elastomeric materials manufactured and sold under the '616 Patent.

214.

Defendants knowingly and willfully infringed and continue to infringe the '616 Patent.

## COUNT I

## PATENT INFRINGEMENT

### 215.

Plaintiff Tillotson reasserts, realleges, and incorporates herein Paragraphs 1–214.

### 216.

By making, using, offering for sale, and/or selling their hand gloves made from elastomeric materials, Defendants have infringed at least one claim of the '616 Patent. Such acts have seriously damaged and irreparably harmed Tillotson and will continue to do so unless enjoined by this Court. Consequently, Tillotson is without an adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tillotson prays that:

### 1.

Defendants and/or Defendants' officers, agents, servants, employees, and all others in active concert or participation with Defendants be permanently enjoined and restrained from:

(a)    infringing United States Patent No. Re. 35,616; and

(b)    otherwise    causing,    assisting    in,    participating    in,    or
contributing to the infringement of said patent.

2.

Defendants be ordered to pay to Tillotson as damages all damages
suffered by Tillotson, including profits lost by Tillotson by reason of the
unlawful acts of Defendants as set forth in this Complaint.

3.

Defendants be ordered to pay to Tillotson as damages no less than a
reasonable royalty by reason of the unlawful acts of Defendants as set forth in
this Complaint.

4.

The   Court   increase   the   damages   awarded   to   Tillotson   from
Defendants up to three times because of the willful infringement of United States
Patent No. Re. 35,616 by Defendants.

5.

This case be adjudged an exceptional case.

6.

Defendants be required to pay to Tillotson the cost of this action, interest, and Tillotson's reasonable attorney fees and disbursements.

7.

Tillotson have such other and further legal and equitable relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff requests a trial by jury of any and all issues triable of right by a jury.

Dated:     September 27, 2007.

Respectfully submitted,

Anthony B. Askew
Georgia State Bar No. 025,300
Stephen M. Schaetzel
Georgia State Bar No. 628,653
Katrina M. Quicker
Georgia State Bar No. 590,859
Jason M. Pass
Georgia State Bar No. 140,972
KING & SPALDING LLP
1180 Peachtree St., N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5135

111

Attorneys for Plaintiff Tillotson Corporation

US00RE35616E

# United States Patent [19]

**Tillotson et al.**

[11] E    Patent Number:    **Re. 35,616**

[45] Reissued    Date of Patent:    **Sep. 30, 1997**

[54] **ELASTOMERIC COVERING MATERIAL AND HAND GLOVE MADE THEREWITH**

[75] Inventors: Neil E. Tillotson, Dixville Notch, N.H.; Luc G. DeBecker, Vancleve, Miss.

[73] Assignee: Tillotson Corporation, Boston, Mass.

[21] Appl. No.: 536,980

[22] Filed: Nov. 13, 1995

**Related U.S. Patent Documents**

Reissue of:
[64] Patent No.: 5,014,362
     Issued: May 14, 1991
     Appl. No.: 522,398
     Filed: May 11, 1990

[51] Int. Cl.⁶ ............................... A41D 19/00
[52] U.S. Cl. ............................ 2/168; 2/167
[58] Field of Search ................... 2/168, 161.7, 167,
     2/169, 161.6, 159, 163, 164; 524/430, 432,
     433, 434, 436; 526/338

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

2,577,343   12/1951   McEwen ...................... 128/294

| | | | |
|---|---|---|---|
| 2,880,189 | 3/1959 | Miller | 260/29.7 |
| 3,759,256 | 9/1973 | Clark | 128/79 |
| 4,096,135 | 6/1978 | Ohishi et al. | 260/79.5 B |
| 4,115,873 | 9/1978 | Hansbury | 2/163 |
| 4,508,867 | 4/1985 | Sato | 524/434 |
| 4,590,123 | 5/1986 | Hashimoto et al. | 424/314.6 |
| 4,584,690 | 3/1987 | Teller et al. | 264/296 |
| 4,834,114 | 5/1989 | Bowman | 128/830 |
| 4,835,169 | 5/1989 | McQuillin et al. | 424/33.2 |
| 4,945,923 | 8/1990 | Evans et al. | 128/842 |
| 4,963,623 | 10/1990 | Miller et al. | 525/404 |
| 4,971,071 | 11/1990 | Johnson | 128/842 |

**FOREIGN PATENT DOCUMENTS**

59-124831   7/1984   Japan .

Primary Examiner—Amy B. Vanatta
Attorney, Agent, or Firm—Jones & Askew

[57] **ABSTRACT**

An elastomeric material and gloves made therewith are substantially impermeable to water vapor and liquid water, have a relatively high tensile strength, and have a relatively low resilience. The gloves conform to the shape of a hand when stretched to fit about the hand and then relax so that the pressure exerted on the hand is substantially reduced. The gloves are particularly useful in medical applications and most particularly useful as surgical gloves.

21 Claims, 3 Drawing Sheet



**% OF INITIAL STRESS**

EXHIBIT
1



FIG 1



FIG 2

Re. 35,616

**1**

## ELASTOMERIC COVERING MATERIAL AND HAND GLOVE MADE THEREWITH

Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.

### TECHNICAL FIELD

The present invention generally relates to elastomeric materials, and more particularly relates to flexible latex gloves useful in medical applications.

### BACKGROUND OF THE INVENTION

Coverings made with elastomeric materials are well known and find many useful applications. One such application is known as the "latex glove." Latex gloves are made from a variety of elastomers and during the glove-making process the elastomers are normally in their latex form. Latex gloves are often desirable because they can be made light, thin, flexible, tight-fitting and substantially impermeable to some liquids and gases such as liquid water and water vapor.

The characteristics of latex make latex gloves useful in medical applications, and particularly useful as surgical gloves. Surgeons are required to perform delicate operations with their hands while wearing latex gloves. Surgical operations often last for hours. To maintain accurate control over instruments with their hands, surgeons must wear relatively thin latex gloves which fit closely to their skin so that they can grip and feel the instruments in their hand almost as if they were not wearing gloves at all. Thus, conventional latex surgical gloves are thin and undersized so as to fit tightly onto the surgeons' hands. However, conventional latex surgical gloves, which are often made of natural rubber, are very resilient and, when stretched to fit about the wearer's hand, apply pressure to the wearer's hand. With conventional latex surgical gloves, this pressure is not appreciably released until the wearer removes the gloves. The pressure applied by conventional latex surgical gloves restricts the movement of the wearer's fingers. Thus, when worn for an extended period of time, the pressure applied by conventional latex surgical gloves tends to numb and fatigue the wearer's hands and causes general discomfort for the wearer. During a long surgical operation, this can cause surgeons some difficulty in controlling instruments with their hands.

Accordingly, there is a need for an elastomeric material which is suitable as a covering, but which relaxes after being stretched about an object. More particularly, there is a need for a latex surgical glove that, when stretched to fit the wearer's hand, conforms to fit closely about the wearer's hand and then relaxes to relieve the pressure applied by the glove to the wearer's hands and give the wearer greater comfort and greater sensitivity in performing delicate tasks.

### SUMMARY OF THE INVENTION

Accordingly, an object of the present invention is to provide an improved latex glove.

Another object of the present invention is to provide a latex glove which does not numb or fatigue the hand of the wearer when worn for an extended period of time.

Another object of the present invention is to provide a latex glove which conforms to the wearer's hand, but does not exert pressure on the wearer's hand for an extended period of time.

**2**

A further object of the present invention is to provide an elastomeric material useful in forming a covering or glove that when stretched to cover an object conforms to the shape of the object and then relaxes to reduce the pressure exerted upon the object.

This invention fulfills these and other objects by providing an elastomeric material characterized by being substantially impermeable to water vapor and liquid water, having a relatively high tensile strength, and having a relatively low level of resilience. More specifically, the elastomeric material of the present invention is characterized by having a tensile strength of at least about 1500 psi as measured according to ASTM D-412 for a sample of the elastomeric material having a thickness from about 4.0 to about 4.5 mils, and having elastic properties such that when the elastomeric material is stretched from an initial configuration to fit about an object, the elastomeric material conforms to the configuration of the object, initially exerting a predetermined pressure on the object and thereafter relaxing to exert on the object a reduced pressure which is substantially less than about 80% of the predetermined pressure.

Preferably, the material of the present invention comprises nitrile butadiene rubber and a metallic compound which is substantially insoluble in water and is present in the amount effective to impart sufficient tensile strength without significantly stiffening the elastomeric material and altering the elastomeric properties. More preferably, the material of the present invention comprises carboxylated nitrile butadiene rubber.

The metallic compound preferably comprises a metal selected from the group consisting of lead, magnesium and zinc. More preferably, the metallic compound is a metallic oxide. Preferred metallic oxides include lead oxide, magnesium oxide and zinc oxide. Zinc oxide is the most preferred metallic compound. Zinc oxide is preferably present in the material in an amount from about 0.1 to about 0.5 parts per 100 parts nitrile butadiene rubber.

According to another aspect, the present invention comprehends a glove comprising a layer of the elastomeric material of the present invention. The glove of the present invention has an initial configuration adapted to receive a hand. Because the glove of the present invention comprises a layer of the elastomeric material of the present invention, the glove of the present invention has elastic properties such that when stretched from the initial configuration to fit about a hand, the glove conforms to the configuration of the hand initially exerting a predetermined pressure on the hand and thereafter relaxing to exert on the hand a reduced pressure which is substantially less than about 80% of the predetermined pressure. In addition, the glove of the present invention has a relatively high tensile strength and is substantially impermeable to water vapor and liquid water. Accordingly, the glove of the present invention is particularly useful as a surgical glove. After being donned by the wearer, the glove of the present invention relaxes so that the pressure on the wearer's hand is substantially reduced, but remains closely fitted about the wearer's hand. Thus, the glove of the present invention may be worn for an extended period of time without diminishing the sensitivity of the wearer's hand or becoming uncomfortable.

Other features, objects, and advantages of the present invention will become apparent from the following detailed description, drawings, and claims.

### BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 is a graph comparing the percent of initial stress required to maintain the stretch of a latex glove made

Re. 35,616

3

according to a preferred embodiment of the present invention to that required by a conventional latex glove.

FIG. 2 is a graph comparing the stress required to maintain the stretch of a latex glove made according to a preferred embodiment of the present invention to that required by a conventional latex glove.

## DETAILED DESCRIPTION

Generally described, the elastomeric material of the present invention is characterized by being substantially impermeable to water vapor and liquid water, having a relatively high tensile strength, and having a relatively low resilience. These properties make the elastomeric material of the present invention particularly useful as a covering, and even more particularly useful as a glove.

The elastomeric material of the present invention has the following properties as measured according to ASTM D-412 on a sample having a thickness from about 4.0 to about 4.5 mils: a tensile strength greater than about 1500 psi and preferably greater than about 2000 psi, and an elongation greater than about 700% and preferably greater than about 800%, and a 500% modulus less than about 350 psi and preferably between about 250 and about 300 psi. The tensile strength is the energy required to stretch the sample to the breaking point and the elongation is the percent stretch of the sample at the breaking point. The 500% modulus is a measure of the energy it takes to stretch the sample 500% of a predetermined length. The elastomeric material of the present invention and gloves made therewith also have a high level of puncture resistance. The elastomeric material of the present invention has a puncture resistance as measured according to ASTM D-120 on a sample having a thickness between 4.0 and 4.5 mils of greater than 800 pounds per inch.

The high level of strength as illustrated by the foregoing properties, enables the elastomeric material of the present invention and gloves made therewith to be pulled and stretched a considerable amount before breaking. Thus, a glove made with the elastomeric material of the present invention can be made to fit closely to the wearer's skin because it can be pulled with a considerable amount of force when being donned by the wearer. This is particularly important for surgical gloves which must be thin and fit closely.

The relatively low resilience, allows the elastomeric material of the present invention and gloves made therewith to relax after being stretched while the stretch is maintained. In other words, the elastomeric material of the present invention has elastic properties such that when the elastomeric material is stretched from an initial configuration to fit about an object such as a hand, the elastomeric material conforms to the configuration of the object, initially exerting a predetermined pressure on the object and thereafter relaxing to exert on the object a reduced pressure which is substantially less than about 80% or the predetermined pressure. Preferably, the elastomeric material of the present invention and gloves made therewith are further characterized by having elastic properties such that the significantly reduced pressure is reached within six minutes after the material is stretched to fit about the object or hand. More preferably, the elastomeric material of the present invention and gloves made therewith are further characterized by having elastomeric properties such that the reduced pressure becomes less than about 50% of said predetermined pressure within about one minute after the material is stretched to fit about the object or hand. Most preferably, the elastomeric

4

material of the present invention and gloves made therewith are further characterized by having elastomeric properties such that the reduced pressure becomes less than [about 90%] *above* 10% of said predetermined pressure within about six minutes after the material is stretched to fit about the object or hand.

Accordingly, gloves made with the elastomeric material of the present invention are particularly useful as surgical gloves because they relax on the hands of the wearer after being donned so that there is little resistance to movement by the wearer's fingers and there is little restriction of blood vessels in the wearer's hands. Thus, gloves made with the elastomeric material of the present invention can be worn for extended periods of time without tiring or numbing the hands of the wearer, thereby giving the wearer greater comfort and greater sensitivity in performing delicate tasks. The elastic properties of the gloves of the present invention are illustrated in FIGS. 1 and 2 discussed hereinbelow.

Preferably, the elastomeric material of the present invention comprises nitrile butadiene rubber and a metallic compound which is substantially insoluble in water and is present in an amount effective to impart sufficient tensile strength to the elastomeric material without significantly stiffening elastomeric material and altering the elastic properties of the elastomeric material. The nitrile butadiene rubber is preferably carboxylated nitrile butadiene rubber which when cured possesses a higher tensile strength than noncarboxylated nitrile butadiene rubber.

The metallic compound preferably comprises lead, magnesium or zinc. Representative compounds are metallic oxides, such as lead oxide, magnesium oxide or zinc oxide. Zinc oxide is preferred. In addition, zinc oxide is preferably present in the elastomeric material in an amount from about 0.1 to about 0.5 parts per hundred parts nitrile butadiene rubber. If the zinc oxide is not present or is present in an amount below this range, the tensile strength of the elastomeric material is reduced and gloves made therewith tear easily. If the zinc oxide is present in an amount above this range, the elastomeric material and gloves made therewith become more stiff and their resilience is reduced. At the higher resilience, gloves made with the elastomeric material maintain undesirable pressure on the hands of the wearer.

The gloves of the present invention are preferably made by dipping a glove form into a latex mixture, curing the latex mixture on the glove form at elevated temperature, and then stripping the cured latex glove from the glove form. The resulting gloves preferably have a thickness from about 4.0 to about 4.5 mils.

The latex mixture preferably comprises carboxylated nitrile butadiene rubber latex having about a 40% dry rubber content and zinc oxide in the amount from about 0.1 to about 0.5 parts per hundred parts rubber. The latex mixture may also include additives commonly used to make cured latex products such as processing agents, pH control agents, accelerating agents, curing agents, complexants, and colorants. As will be appreciated by those skilled in the art, the amounts of these additives may be varied considerably. This preferred latex mixture is preferably cured in an oven for 30 to 40 minutes at 270 to 300 degrees Fahrenheit.

The present invention is further illustrated by the following example which is designed to teach those of ordinary skill in the art how to practice this invention and represent the best mode contemplated for carrying out this invention.

## EXAMPLE 1

Latex gloves were made as follows. A latex material having the formula set forth in Table 1 was thoroughly

Re. 35,616

5

mixed in a container. The amount of each component of the material is set forth in parts per hundred dry rubber (PHR). Table 1 shows the amount of dry carboxylated nitrile butadiene rubber present in the latex composition; however, the carboxylated nitrile butadiene rubber was added to the latex composition as a latex comprising 40% by weight of carboxylated nitrile butadiene rubber with the remainder water and surfactant. The sodium dodecylbenzene sulfonate is a processing agent, the potassium hydroxide is present as a pH control agent, the sulfur is a curing agent, the zinc dibutyl dithiocarbamate is an accelerating agent, the titanium dioxide is present as a pigment, the MICHEMLUBE 135 is a paraffin wax emulsion available from Michelman, Inc., Cincinnati, Ohio, and the COAGULANT WS is a polyether polysiloxane coagulant available from Bayer, Inc.

Glove forms were prepared by washing with a detergent and rinsing. The glove forms were then dipped in a coagulant mixture comprising calcium nitrate, water and a nonionic soap to promote coagulation of the latex around the glove forms. After being dipped in the coagulant mixture, the glove forms were dipped in the latex material. The latex coated glove forms were then dipped in a leach consisting of warm water and then into a powder slurry consisting of powdered starch. The latex coated glove forms were then placed in an oven for 30 minutes at 248 degrees Fahrenheit to cure the latex. After removal from the oven, the cured latex coated glove forms were dipped in a post curing leach consisting of warm water. The cured latex gloves were then stripped from the glove forms and tumbled.

TABLE 1

EXAMPLE 1 LATEX FORMULATION

| | PHR |
|---|---|
| Carboxylated nitrile butadiene rubber (dry) | 100.0 |
| Sodium dodecylbenzene sulfonate | 0.25 |
| Potassium hydroxide | 0.3 |
| Sulfur | 1.5 |
| Zinc dibutyl dithiocarbamate | 1.5 |
| Zinc oxide | 0.5 |
| Titanium dioxide | 4.0 |
| MICHEMLUBE 135 | 3.0 |
| COAGULANT WS | 0.5 |
| STAN-TONE WD 3467 pigment | 0.1 |
| CHERRY FLAVOR #30767 pigment | 0.2 |

The gloves from Example 1 were subjected to a series of tests, the results of which are shown in Tables 2 and 3 and FIGS. 1 and 2. The tensile strength, elongation, and 500% modulus of the gloves made according to Example 1 were each measured according to ASTM D-412 and are shown in Table 2.

TABLE 2

Physical Properties-ASTM D-412

| | |
|---|---|
| Thickness | 4.5 mils |
| Tensile Strength | 7200 psi |
| Elongation | >600% |
| 500% modulus | 350 psi |

The puncture resistances of the gloves from Example 1, of a conventional natural rubber latex examination glove, and of a conventional natural rubber latex surgical glove were measured according to ASTM D-120 and the results are shown in Table 3. Table 3 illustrates the superior puncture resistance of the gloves made according to Example 1.

6

TABLE 3

PUNCTURE RESISTANCE-ASTM D-120

| Glove | lbs. | grams | lbs./mils |
|---|---|---|---|
| NR examination | 1.5 | 4.7 | 281 |
| NR surgical | 2.9 | 1.7 | 396 |
| Example 1 | 2.9 | 4.7 | 642 |

The resilience of the gloves made according to Example 1 and a conventional natural rubber latex glove was tested as follows. A sample was cut from each glove and stretched 100% of its length to determine the initial 100% modulus according to ASTM D-412. The amount of stress required to maintain this 100% stretch was then recorded every minute for 30 minutes. The resulting data is shown in FIGS. 1 and 2. FIG. 1 is a plot of percent of initial stress versus time for the sample from the Example 1 glove and the sample from the conventional natural rubber glove. FIG. 2 is a plot of stress in psi versus time for the same samples. As can be seen from FIGS. 1 and 2, the stress required to maintain the 100% stretch of the Example 1 glove sample was substantially zero within six minutes after the initial stretch, while the stress required to maintain the 100% stretch of the conventional glove sample dropped to only about 80% of the initial stress over the 30 minute period.

The foregoing description relates only to preferred embodiments of the present invention, and numerous changes and modifications may be made therein without departing from the spirit and scope of the invention as defined in the following claims.

What is claimed is:

1. A closely fitting glove comprising a layer of elastomeric material (a) comprising nitrile butadiene rubber, (b) having an initial configuration adapted to receive and fit closely about a hand, and (c) characterized by (i) being substantially impermeable to water vapor and liquid water, (ii) having a tensile strength of at least about 1500 psi as measured according to ASTM D-412 on a sample of the elastomeric material having a thickness from about 4.0 to about 4.5 mils, and (iii) having a thickness and elastic properties such that the glove is capable of being stretched to fit closely about the hand and when stretched from the initial configuration to fit closely about the hand, the elastomeric material conforms to the configuration of the hand, initially exerting [a predetermined] an initial pressure on the hand and thereafter still fitting closely about the hand, but relaxing, within about 6 minutes after the glove is stretched to fit about said hand, to exert on the hand a reduced pressure which is [substantially] less than about [80%] 50% of the [predetermined] initial pressure.

2. A glove as in claim 1, wherein the layer of elastomeric material further comprises [nitrile butadiene rubber and] a metallic compound which is substantially insoluble in water and is present in an amount effective to impart said tensile strength without significantly stiffening the elastomeric material and altering said elastic properties.

3. A glove as in claim 2 wherein the metallic compound comprises a metal selected from the group consisting of lead, magnesium and zinc.

4. A glove as in claim 2 wherein the metallic compound comprises metallic oxide.

5. A glove as in claim 4 wherein the metallic oxide is selected from the group consisting of lead oxide, magnesium oxide and zinc oxide.

6. A glove as in claim 2 wherein the metallic compound comprises zinc oxide present in an amount from about 0.1 to about 0.5 parts per 100 parts nitrile butadiene rubber.

Re. 35,616

**7**

7. A glove as in claim 1, wherein the nitrile butadiene rubber comprises carboxylated nitrile butadiene rubber and the layer of elastomeric material further comprises [carboxylated nitrile butadiene rubber and] a metallic compound which is substantially insoluble in water and is present in an amount effective to impart said tensile strength without significantly stiffening said elastomeric material and said elastic properties.

8. A glove as in claim 7 wherein the metallic compound comprises a metal selected from the group consisting of lead, magnesium and zinc.

9. A glove as in claim 7 wherein the metallic compound comprises metallic oxide.

10. A glove as in claim 9 wherein the metallic oxide is selected from the group consisting of lead oxide, magnesium oxide and zinc oxide.

11. A glove as in claim 7 wherein the metallic compound comprises zinc oxide present in an amount from about 0.1 to about 0.5 parts per 100 parts nitrile butadiene rubber.

[12. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having elastic properties such that said reduced pressure is reached within 6 minutes after the glove is stretched to fit about said hand.]

[13. A glove as in claim 1, further characterized by having elastomeric properties such that the reduced pressure is less than about 50% of said predetermined pressure.]

14. A glove as in claim [13] 1 further characterized by having elastic properties such that said reduced pressure is reached within about one minute after the glove is stretched to fit about said hand.

15. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having elastic properties

**8**

such that said reduced pressure is less than about [90%] 10% of said [predetermined] initial pressure.

[16. A glove as in claim 15, wherein the layer of elastomeric material is further characterized by having elastic properties such that said reduced pressure is reached within about 6 minutes after the material is stretched to fit about said hand.]

17. A glove as in claim 1, wherein the layer of elastomeric material has a thickness up to about 4.5 mils.

18. A glove as in claim 1, wherein the layer of elastomeric material has a thickness from about 4 to about 4.5 mils.

19. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having a puncture resistance of greater than about 800 lbs/in.

20. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having an elongation of greater than about 800%.

21. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having a 500% modulus up to about 350 psi.

22. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having a 500% modulus in the range from about 250 to about 350 psi.

23. A glove as in claim 1, wherein the layer of elastomeric material is further characterized by having elastomeric properties such that said reduced pressure is about zero.

24. A glove as in claim 1, wherein the nitrile butadiene rubber comprises carboxylated nitrile butadiene rubber.

* * * * *

# Exhibit C



**United States Patent and Trademark Office**

CONTACTS

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Contacts > Visiting USPTO > Building Detail – USPTO Alexandria Headquarters



Buildings and Street Addresses

| | |
|---|---|
| **Carlyle Townhouse** | 551 John Carlyle Street |
| **Elizabeth Townhouse** | 550 Elizabeth Lane |
| **Jefferson Building** | 500 Dulany Street |
| **Knox Building** | 501 Dulany Street |
| **Madison Building** (East) | 600 Dulany Street |
| **Madison Building** (West) | 600 Dulany Street |
| **Randolph Building** | 401 Dulany Street |
| **Remsen Building** | 400 Dulany Street |
| **East Parking Garage** | 551 John Carlyle Street |
| **West Parking Garage** | 550 Elizabeth Lane |

*Is there a question about what the USPTO can or cannot do that you cannot find an answer for? Send questions about USPTO programs and services to the* **USPTO Contact Center (UCC).** *You can suggest USPTO webpages or material you would like featured on this section by E-mail to the* **webmaster@uspto.gov**. *While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 12/22/2005 13:46:57

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))

Page 1

**H**
Mikkilineni v. Com. of Pennsylvania
D.D.C.,2003.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
M.R. MIKKILINENI, Plaintiff,
v.
COMMONWEALTH OF PENNSYLVANIA et al.,
Defendants.
Civil Action No.: 02-1205 (RMU).

Aug. 5, 2003.

M.R. Mikkilineni, Washington, DC, Pro Se Plaintiff.
Robert E. Leidenheimer, Jr., Assistant United
States Attorney, Washington, DC, for the Federal
Defendants.
David Patrick Durbin, Jordan, Coyne & Savits,
Washington, DC, for Defendant Forest Hills.
William F Fox, Catholic University of America,
Cardinal Station, Washington, DC, for Defendant
Glenn Engineering & Associates.
Eric Alan Kuwana, Patton Boggs, L.L.P., Washington, DC, for Defendant Pittsburgh Water and Sewer
Authority.
Devon Jacob, Office of the Attorney General, Harrisburg, PA, for Defendant Commonwealth of
Pennsylvania.

### MEMORANDUM OPINION

RICARDO M. URBINA, District Judge.

### DENYING THE FEDERAL DEFENDANTS' MOTION TO STRIKE; GRANTING THE DEFENDANTS' RENEWED MOTIONS TO DISMISS

### I. INTRODUCTION

*1 This action arises from previously-litigated contract disputes and what the *pro se* plaintiff characterizes as the defendants' "fraud upon the Court(s)" during this earlier litigation. Due to the plaintiff's dissatisfaction with the results of the previous cases, filed in Pennsylvania state and federal courts, he has re-filed similar claims in this district and added claims against the United States. Specifically, the plaintiff alleges civil rights, contract, and tort violations, and seeks monetary damages, a declaratory judgment, and a writ of mandamus compelling the Attorney General to conduct an investigation of the alleged violations.

This matter is before the court on the federal defendants' motion to strike the plaintiff's first amended complaint, the federal defendants' renewed motion to dismiss, and the private and state defendants' renewed motions to dismiss.[FN1] Because the federal defendants' arguments in their motion to strike are not well-substantiated by law from this circuit, the court denies this motion. In addition, because the plaintiff's claims against the federal defendants lack subject-matter jurisdiction and fail to state a claim, the court grants the federal defendants' renewed motion to dismiss. Because venue for the plaintiff's claims against the private and state defendants is improper in this district, the court grants the private and state defendants' renewed motions to dismiss. Finally, because the statute of limitations bars the plaintiff's claims against defendant Forest Hills, the court grants its renewed motion to dismiss.

FN1. In his complaint, the plaintiff names two federal defendants: the United States, which he describes as including the federal judges who presided over his federal lawsuits and appeals and the judges' clerks; and Leonidas R. Mecham, the director of the Administrative Office of the U.S. Courts who denied the plaintiff's tort claims against the federal judges. First Am. Compl. ("Compl.") at 4-6. The plaintiff describes three state defendants: the Commonwealth of Pennsylvania ("Pennsylvania"), consisting of the state

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))**

judges who presided over his state litiga-
tion, the Pennsylvania Department of
Transportation, and the Pennsylvania At-
torney General; the Borough of Forest
Hills ("Forest Hills"), a municipality in
Pennsylvania; and Pittsburgh Water and
Sewer Authority ("Pittsburgh"), a govern-
ment authority that manages Pittsburgh's
water and sewer system.*Id.* Finally, the
private defendant is Glenn Engineering
and Associates, which the plaintiff de-
scribes as encompassing the engineering
firm and its lawyer "attorney Shields"
(collectively, "Glenn").*Id.*

## II. BACKGROUND

### A. Facts of the Case

In his first amended complaint, the plaintiff outlines
contract disputes originating from (1) a 1989 con-
tract between his corporation and defendant
Pennsylvania to build a "box-culvert" in Clearfield,
Pennsylvania; (2) a 1989 contract between his cor-
poration and defendant Forest Hills to build storm
sewers in Pennsylvania; (3) a 1989 contract with
defendant Glenn involving a waterline project; and
(4) a 1986 contract with defendant Pittsburgh to
build a pump station. Compl. at 7, 11-12, 16-17,
20-22. The plaintiff makes vague allegations that
all or some of the defendants committed "fraud
upon the Court(s)" during the plaintiff's prior litiga-
tion involving these projects in Pennsylvania state
and federal courts. *Id.* at 10-11, 15, 20, 23.

The plaintiff charges the private and state defend-
ants with civil rights, contract, and tort violations.
*Id.* at 25-26.In addition, the plaintiff charges that
defendants Pennsylvania and the United States,
through their respective judges, violated the Consti-
tution when the judges ruled against the plaintiff.
*Id.* at 9-10, 14-15, 19-20, 23-24.He also pleads,
without specificity, that these judges conspired dur-
ing the court proceedings to commit fraud and
thereby deprive him of his right to a jury trial. *Id.* at
27.According to the plaintiff, defendant Mecham,

acting through the federal judges, deprived the
plaintiff of his constitutional rights by creating a
policy prohibiting corporations from appearing in
court *pro se* and conspiring with the federal judges
to use this policy to block the plaintiff's access to
federal courts. *Id* . at 6-7, 27-28.Further, the
plaintiff charges that the federal judges violated the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. §
1346, by ruling against him. *Id.* at 27-30.

**\*2** The plaintiff asks for a writ of mandamus com-
pelling the Attorney General to investigate the de-
fendants' alleged conspiracy against the plaintiff.
*Id.* at 27.Furthermore, the plaintiff seeks a declarat-
ory judgment and monetary damages. *Id.* at 29.

### B. Procedural History

The plaintiff filed his original complaint on June
18, 2002.[FN2]On September 23, 2002, the United
States filed a motion to dismiss the plaintiff's com-
plaint. On October 10, 2002, after all of the defend-
ants had filed motions to dismiss, the plaintiff filed
a first amended complaint that added defendant
Mecham. In response, the state and private defend-
ants filed renewed motions to dismiss. The federal
defendants, however, filed a motion to strike the
first amended complaint. On June 6, 2003, the court
directed the federal defendants to file a notice or
motion stating whether they sought to renew their
original motion to dismiss and apply it to the first
amended complaint. In response, the federal de-
fendants filed a renewed motion to dismiss that in-
corporates by reference the original motion to dis-
miss and adds grounds for the dismissal of the new
claims against defendant Mecham. Finally, the
plaintiff filed a motion requesting a hearing or tele-
phone depositions on the issues of specific jurisdic-
tion and venue.

> FN2. The plaintiff has filed eight different
> cases in the U.S. District Court for the Dis-
> trict of Columbia: civil actions 01-0314,
> 01-2287, 02-0702, 02-0716, 02-0970,
> 02-1118, 02-1205, 02-2222.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))**

## III. ANALYSIS

### A. The Court Denies the Federal Defendants' Motion to Strike

The federal defendants move to strike the plaintiff's first amended complaint, arguing that Federal Rule of Civil Procedure 21 bars the plaintiff from adding a party in the first amended complaint without leave of court. Fed. Defs.' Mot. to Strike at 3-4. The D.C. Circuit, however, permits plaintiffs to amend complaints pursuant to Rule 15 "once as a matter of course" so long as the opposing party has not yet served a responsive pleading and the court has not ruled on a motion to dismiss. FED.R.CIV.P. 15(a); *James V. Hurson Assocs., Inc., v. Glickman*, 229 F.3d 277, 282-83 (D.C.Cir.2000); *Gov't of Guam v. Am. President Lines*, 28 F.3d 142, 150 (D.C.Cir.1994). A motion to dismiss is generally not considered to be a "responsive pleading" under Rule 15(a).*Id.* In addition, "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings."*Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876;*James V. Hurson Assocs.*, 229 F.3d at 282-83.

In moving to strike the first amended complaint, the federal defendants do not cite to any cases demonstrating that Rule 21 trumps the mandate of Rule 15(a) and this circuit that a plaintiff can amend "once as a matter of course."Therefore, because this circuit favors permitting *pro se* plaintiffs to amend their complaints, and the amendment was of right, the court denies the federal defendants' motion to strike the first amended complaint. *Moore*, 994 F.2d at 876;*Gov't of Guam*, 28 F.3d at 150.

### B. The Court Grants the Federal Defendants' Renewed Motion to Dismiss

**\*3** This court dismisses all of the plaintiff's claims against the federal defendants because the plaintiff's claims do not survive the federal defendants' renewed motion to dismiss pursuant to Rule 12(b)(1) and (6). Evaluating the plaintiff's claims against defendant Mecham, the court determines that these claims are so "patently insubstantial" that the court lacks jurisdiction over them. Next, the court concludes that the plaintiff's claims against the defendant United States fail to state cognizable claims because the judges are protected by judicial immunity. Finally, the plaintiff's requests for a writ of mandamus and declaratory relief fail to state cognizable claims because these forms of relief are not legally permissible.

### 1. Legal Standard for a Motion to Dismiss

#### a. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999); *Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C.2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)). The court may dismiss a complaint for lack of subject-matter jurisdiction only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D . C.Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In this circuit, courts must assume the truth of the allegations made and construe them in a light favorable to the plaintiff. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, however, a court resolving a Rule 12(b)(1) motion must give the complaint's factual allegations closer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))**

scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992).

**b. Rule 12(b)(6)**

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 12(b)(6); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.,* 216 F .3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996). In reviewing a *pro se* plaintiff's submissions, the court must apply "less stringent standards" than it would in considering "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

**\*4** In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer,* 416 U.S. at 236. The court need not accept as true legal conclusions cast as factual allegations. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

**2. The Court Dismisses the Claims Against Defendant Mecham**

The federal defendants argue that because the claims against defendant Mecham are patently insubstantial, the court should dismiss them for lack of subject-matter jurisdiction. Fed. Defs.' Renewed Mot. to Dismiss at 4-5. The court can dismiss a case for want of subject-matter jurisdiction "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial." *Bell v. Hood,* 327 U.S. 678, 682 (1946); *see also Oneida Indian Nation of N.Y. State v. County of Oneida,* 414 U.S. 661, 666 (1974). The D.C. Circuit has recognized that courts lack jurisdiction over claims that are "patently insubstantial," such as claims alleging bizarre conspiracy theories. *Best v. Kelly,* 39 F.3d 328, 330 (D.C.Cir.1994). Whereas Rule 12(b)(6) dismissals "cull *legally* deficient complaints[,]" the Rule 12(b)(1) substantiality doctrine is "reserved for complaints resting on truly fanciful *factual* allegations." *Id.* at 331 n. 5.

The plaintiff claims that defendant Mecham created a policy prohibiting *pro se* representation of corporations, and carried out that policy through, *inter alia,* "Chief Justice Rehnquist of the Supreme Court," "Chief Judge Becker of the Third Circuit," and "Chief Judge Ziegler of the U.S. Court in Pittsburgh." Compl. at 5-6, 27-28; Pl.'s 11/01/02 Opp'n at 7-9. The plaintiff further alleges that by conspiring with the judges to keep the plaintiff out of court, defendant Mecham deprived him of his constitutional rights. Compl. at 27-28.

The plaintiff's conspiracy theory is "patently insub-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 5
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))**

stantial." *Best,* 39 F.3d at 330. Defendant Mecham is not responsible for the above-listed judges' rulings that corporations may not appear in court *pro se,* nor is he responsible for the creation of such a policy. Rather, the Supreme Court created this rule and the Third Circuit has followed this rule since long before the plaintiff's litigation began. *Rowland v. Cal. Men's Colony,* 506 U.S. 194, 201-02 (1993) (stating "[i]t has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel") (citing *Osborn v. President of Bank of U.S.,* 9 Wheat. 738, 829 (1824)); *Simbraw, Inc. v. United States,* 367 F.2d 373, 373-74 (3d Cir.1966). Thus, the claims against defendant Mecham are so "patently insubstantial" as to deprive the court of jurisdiction over the claims. *Best,* 39 F.3d at 330;*Empagran,* 315 F.3d at 343.

**3. The Court Dismisses the Claims Against Defendant United States**

*5 The federal defendants argue that the plaintiff's claims against the federal judges fail to state a claim because judicial immunity protects the judges from suit. Fed. Defs.' Renewed Mot. to Dismiss at 6. The principle of judicial immunity is well-established. *Tinsley v. Widener,* 150 F.Supp.2d 7, 11 (D.D.C.2001) (citing *Stump v. Sparkman,* 435 U.S. 349 (1978); *Bradley v. Fisher,* 80 U.S. 335 (1871)). Absolute immunity is necessary for judges and their clerks to carry out their judicial functions because judges must "act upon [their] convictions, without apprehension of personal consequences to [themselves]."*Bradley,* 80 U.S. at 347;*Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir.1988). Appealing to a higher court for relief is the only judicial procedure available to a litigant who seeks to challenge the legality of decisions made by a judge in her judicial capacity. *Dacey v. Clapp,* 1993 U.S. Dist. LEXIS 15815, at *5 (D.D.C. Oct. 29, 1993). The acts of assigning a case, ruling on pretrial matters, and rendering a decision all fall within a judge's judicial capacity. *John v. Barron,* 897 F.2d 1387, 1391 (7th Cir.1990), *cert. denied,*498 U.S. 821

(1990). Judicial immunity, however, does not extend to judges' administrative, legislative, or executive functions. *Forrester v. White,* 484 U.S. 219, 227 (1988).

The plaintiff asserts that defendant United States, through the federal judges and their clerks, acted unconstitutionally and in violation of the FTCA by dismissing the plaintiff's previous civil actions and appeals. Compl. at 27-28. Because the alleged tortious acts are judicial acts, the judicial immunity defense applies to the federal judges and the clerks. 28 U.S.C § 2674; *John,* 897 F.2d at 1391. In addition, defendant United States is entitled to assert judicial immunity when sued for the actions of the judiciary because this defense is available to the judicial officers whose acts are the basis for these claims. 28 U.S.C. § 2674. Accordingly, this court dismisses the plaintiff's claims against the judges and their law clerks for failure to state a viable claim. *Hishon,* 467 U.S. at 73.

**4. The Court Dismisses the Petition for a Writ of Mandamus**

The federal defendants move the court to dismiss the plaintiff's petition for a writ of mandamus because it fails to state a legally cognizable claim. Fed. Defs.' Renewed Mot. to Dismiss at 5. A writ of mandamus is "an extraordinary [remedy], and it is to be utilized only under exceptional circumstances."*Haneke v. Sec'y of Health, Educ. & Welfare,* 535 F.2d 1291, 1296 (D.C.Cir.1976)."[M]andamus generally will not issue unless there is [ (1) ] a clear right in the plaintiff to the relief sought, [ (2) ] a plainly defined and nondiscretionary duty on the part of the defendant to honor that right, and [ (3) ] no other adequate remedy."*Ganem v. Heckler,* 746 F.2d 844, 852 (D.C.Cir.1984). The plaintiff has the burden to satisfy this three-part test.*Id.; see also Whittle v. Moschella,* 756 F.Supp. 589, 596-97 (D.D.C.1991). Failure to meet any one of these three requirements is fatal to the plaintiff's request. *Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 6
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))**

**\*6** The plaintiff asserts that the court should compel the Attorney General to conduct an investigation into the civil conspiracy, bad faith acts, and "fraud upon the Court(s)" of all of the defendants. Compl. at 27. In his complaint, the plaintiff alleges that the Attorney General has a duty to investigate these claims. *Id.* The court, however, need not accept as true the plaintiff's legal conclusion. *Kowal,* 16 F.3d at 1276. The plaintiff's baseless assertions that the Attorney General has a duty to investigate his claims fails to satisfy his burden of demonstrating a "nondiscretionary duty on the part of the defendant" to investigate. Pl.'s 6/16/03 Opp'n at 4-5; Pl.'s 10/10/02 Opp'n at 26-29; *Ganem,* 746 F.2d at 852. Consequently, the plaintiff's petition for a writ of mandamus fails to state a cognizable claim.*Hishon,* 467 U.S. at 73.

**5. The Court Dismisses the Request for Declaratory Relief**

As with the petition for a writ of mandamus, the federal defendants move the court to dismiss the plaintiff's petition for declaratory relief because it fails to state a legally cognizable claim. Fed. Defs.' Renewed Mot. to Dismiss at 3. The Declaratory Judgment Act "does not provide a means whereby previous judgments by state or federal courts may be reexamined, nor is it a substitute for appeal[.]"*Shannon v. Sequeechi,* 365 F.2d 827, 829 (10th Cir.1966). Therefore, courts "will refuse to entertain a declaratory judgment action where the controversy has been settled by the decision of some other tribunal."*Baier v. Parker,* 523 F.Supp. 288, 290 (M.D.La.1981) (internal citations omit- ted).

The plaintiff seeks a declaration by this court that the federal judges' decisions in the plaintiff's previous civil actions are erroneous. Compl at 29. The Declaratory Judgment Act, however, does not permit this court to reexamine the decisions of other tribunals. *Shannon,* 365 F.2d at 829. Thus, the plaintiff's petition for a declaratory judgment fails to state a cognizable claim. *Hishon,* 467 U.S. at 73.

**C. The Court Grants the Renewed Motions to Dismiss for Improper Venue Filed By Defendants Pennsylvania, Glenn, and Pittsburgh**

**1. Legal Standard for a Motion to Dismiss for Improper Venue**

Federal Rule of Civil Procedure 12(b)(3) states that the court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum.[FN3]In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor. *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.,* 148 F.Supp.2d 50, 54 (D.D.C.2001). The court, however, need not accept the plaintiff's legal conclusions as true.*Id.;Kowal,* 16 F.3d at 1276. In addition, the court may examine facts outside of the complaint to determine whether venue is proper. 5A FED. PRAC. & PROC. CIV. 2d § 1352.

> FN3. The federal circuits are split regarding whether the burden in a Rule 12(b)(3) motion is on the defendant or the plaintiff. 5A FED. PRAC. & PROC. CIV. 2d § 1352. The Fourth, Sixth, and Seventh Circuits place the burden on the plaintiff, in keeping with the burden for other jurisdictional issues. *Id.* In contrast, the Third and Eighth Circuits place the burden on the defendant, explaining that venue is a "personal privilege" of the plaintiff. *Id.* The D.C. Circuit has not spoken on this issue. Because the defendant's motion prevails regardless of which party bears the burden, the court need not resolve this is- sue.

**2. Venue in This District Is Improper**

**\*7** Defendants Pennsylvania, Glenn, and Pittsburgh argue that the court should dismiss this action for improper venue pursuant to Federal Rule of Civil

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                            Page 7
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))**

Procedure 12(b)(3). Pa.'s Renewed Mot. to Dismiss at 5; Glenn's Renewed Mot. to Dismiss at 5; Pittsburgh's Renewed Mot. to Dismiss at 7. The plaintiff claims that venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions occurred in this district, the plaintiff resides here and no real property is involved. Compl. at 2; Pl.'s 10/10/02 Opp'n at 10-13, 18-19; Pl.'s Mot. for Hearing at 3. The plaintiff also argues that venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions occurred in this district and the federal defendants reside in this district. Pl.'s Mot. for Hearing at 3.

Because 28 U.S.C. § 1391(e) [FN4] applies only when "a defendant is an officer or employee of the United States or any agency thereof," and because the court has now dismissed all of the claims against the federal defendants, the plaintiff's argument that venue exists here pursuant to 28 U.S.C. § 1391(e) no longer has any basis.[FN5] 28 U.S.C. § 1391(e). The venue statute that applies to the state and private defendants is 28 U.S.C. § 1391(b). This statute states:

> FN4. The text of 28 U.S.C. § 1391(e) provides as follows:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such

action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

> 28 U.S.C. § 1391(e).

> FN5. In fact, the plaintiff's argument would fail even if the United States were still a party because 28 U.S.C. § 1391(e) requires the plaintiff to establish venue for the non-federal defendants as if the federal defendants were not parties to the action. *Id.; Boggs v. U.S. Secret Serv.,* 987 F.Supp. 11, 16 (D.D.C.1997) (stating that for a federal court to hear a case it must have venue over each claim).

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
28 U.S.C. § 1391(b).

Evaluating the first prong of 28 U.S.C. § 1391(b), the court finds that none of the remaining defendants (the state and private defendants) reside in the District of Columbia. *E.g.* Compl. at 4-5; Pl.'s 8/9/02 Opp'n at 1; Glenn's Renewed Mot. to Dismiss at 2; 28 U.S.C. § 1391(b)(1). As for the second prong, although the complaint includes a statement that a "substantial part of the omissions occurred in DC area," it describes in detail violations of the contracts between the plaintiff and the state and private defendants and litigation in which the defendants allegedly committed fraud, all of which transpired in Pennsylvania. Compl. at 2,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))

4-31; 28 U.S.C. § 1391(b)(2). The court determines that the plaintiff's unsubstantiated assertion that most of the omissions occurred in this district is a conclusory statement that incorrectly characterizes the facts of the complaint. Compl. at 2; *2215 Fifth St. Assocs.,* 148 F.Supp.2d at 54;*see also Kowal,* 16 F.3d at 1276. In addition, the complaint demonstrates that a substantial part, if not all, of the events giving rise to the plaintiff's claims occurred in Pennsylvania, not in the District of Columbia, and no relevant property exists in the District of Columbia. *E.g.,* Compl. at 6-25. Finally, because this action could be filed in the Western District of Pennsylvania-indeed that district has already heard and dismissed these same claims the third prong is not applicable. 28 U.S.C. § 1391(b)(3). Accordingly, venue does not exist in the District of Columbia but does exist in the Western District of Pennsylvania, the "district where a substantial part of the events or omissions giving rise to the claims occurred."28 U.S.C. § 1391(b)(2).

**8** If venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."28 U.S.C. § 1406(a); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C.Cir.1983). The plaintiff, however, does not ask the court to transfer the case to Pennsylvania. Rather, he insists that venue is improper in the Western District of Pennsylvania "due to the 'situation that exist' there[.]" Compl. at 2. The plaintiff explains that finding an impartial judge in the Western District of Pennsylvania "is not possible until 3rd Cir. changed its unlawful policy on counsel representation."*Id.* at 2. Because the plaintiff does not request a transfer of venue, and because he filed his cases here hoping to find a more sympathetic judge, transferring this action to Pennsylvania would not promote the interest of justice. *Naartex Consulting Corp.,* 722 F.2d at 789;*Prof'l Managers' Ass'n v. United States,* 761 F.2d 740, 744 (D.C.Cir.1985) (discussing Congress' disdain for forum shopping). Accordingly, the court grants the renewed motions to dismiss for improper

venue filed by defendants Pennsylvania, Pittsburgh, and Glenn.[FN6]

> FN6. Because defendant Forest Hills does not challenge venue, the court must evaluate its renewed motion to dismiss even though the court lacks venue over the claims against defendant Forest Hills. *Buchanan v. Manley,* 145 F.3d 386, 388 (D.C.Cir.1998) (stating that a district court may not *sua sponte* dismiss claims for lack of venue).

**D. The Court Grants Defendant Forest Hills's Renewed Motion to Dismiss Because the Statute of Limitations Bars the Claims**

**1. Legal Standard for Statute of Limitations**

A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 578 (D.C.Cir .1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C.Cir.1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred and if "no reasonable person could disagree on the date" on which the cause of action accrued. *Id.;Smith v. Brown & Williamson Tobacco Corp.,* 3 F.Supp.2d 1473, 1475 (D.D.C.1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.,* 890 F.2d 456, 463 n. 11 (D.C.Cir.1989)).

Under the District of Columbia statute of limitations, a plaintiff has three years to bring civil rights, contract, conversion and intentional infliction of emotional distress claims. Civil rights claims brought in this court under section 1983 are governed by the District of Columbia's residual statute of limitations, D.C.Code § 12-301(8).*Carney v. Am.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Univ.,* 151 F.3d 1090, 1096 (D.C.Cir.1998) (citing *Owens v. Okure,* 488 U.S. 235, 243-50 (1989)). Accordingly, a plaintiff must bring a section 1983 claim within three years of its accrual. *Id.* In addition, section 12-301(2) and (7) of the D.C.Code apply three-year statutes of limitations to conversion and contract claims, respectively. *A .I. Trade Finance, Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1456 (D.C.Cir.1995). Because section 12-301 does not specify a statute of limitations for intentional infliction of emotional distress, section 12-301(8) applies to such claims. *See Carney,* 151 F.3d at 1096.

## 2. The Statute of Limitations Bars the Claims Against Defendant Forest Hills

*9 Defendant Forest Hills argues that the three-year statute of limitations, as set forth in D.C.Code § 12-301, bars the plaintiff's civil rights, contract, conversion and intentional infliction of emotional distress claims against it. Forest Hills's Renewed Mot. to Dismiss at 2; Forest Hills's Mot. to Dismiss at 6-7. Defendant Forest Hills argues that all of the plaintiff's allegations against it pertain to actions relating to its 1989 contract with the plaintiff and occurring no later than 1992. Forest Hills's Mot. to Dismiss at 6-7; *see also* Compl. 11-14 (setting forth the alleged violations of defendant Forest Hills). Applying section 12-301 as discussed in Part III.D.1, the court determines that a three-year statute of limitations applies to the plaintiff's civil rights, breach of contract, conversion and intentional infliction of emotional distress claims against defendant Forest Hills. D.C.Code § 12-301(2), (7), (8); Compl. at 1, 25-26. Therefore, to comply with these statutes of limitations, the plaintiff had to bring his claims within three years of their accrual. D.C.Code § 12-301(2), (7), (8).

The plaintiff failed to respond to defendant Forest Hills's renewed motion to dismiss, despite the court's order warning the plaintiff that failure to respond to a motion to dismiss "may result in the court granting the motion and dismissing the

[FN7]Order dated Aug. 2, 2002 (citing *Fox v. Strickland,* 837 F .2d 507, 509 (D.C.Cir.1988)).

> FN7. An opposing party must file a responsive memorandum of points and authorities in opposition to a Rule 12 motion within 11 days of the filing of the motion. LCvR 7.1(b). If the opposing party fails to do so, the court may treat the motion as conceded. *Giraldo v. Dep't of Justice,* 202 U.S.App. LEXIS 13685, at *2 (D.C.Cir. July 8, 2002) (citing *Fed. Deposit Ins. Corp. v. Bender,* 127 F.3d 58, 68 (D.C.Cir.1997)); *Twelve John Does v. District of Columbia,* 117 F.3d 571, 577 (D.C.Cir.1997). Accordingly, even if the court did not grant the motion to dismiss pursuant to the statute of limitations argument, the court could grant the renewed motion to dismiss as conceded.

The plaintiff, however, did respond to defendant Forest Hills's original motion to dismiss. Pl.'s 8/9/02 Opp'n. In that response, the plaintiff did not dispute the defendant's contention that the relevant acts all accrued in or before 1992. *Id.* Indeed, the plaintiff's August 11, 1994 complaint in civil action 94-1349, filed in the Western District of Pennsylvania, describes these same acts and thereby demonstrates that the plaintiff was aware of the acts in 1994, if not in 1992. Forest Hills's Mot. to Dismiss Ex. 1. Consequently, the acts accrued no later than 1994 and the statute of limitations expired in 1997, five years before the plaintiff filed his complaint in this action. D.C.Code § 12-301(2), (7), (8); *Smith,* 3 F.Supp.2d at 1475.

The plaintiff asserts an equitable tolling argument, stating that the court should toll the statute of limitations because he has previously filed identical claims and this action is merely a "follow-on case". A plaintiff, however, may invoke equitable tolling only when a defendant is found to have committed fraudulent concealment, hiding from the plaintiff the basis of a cause of action. *Hohri v. United States,* 782 F.2d 227, 246 (D.C.Cir.1986), *vacated*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 10
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.))

*and remanded on other grounds,* 482 U.S. 64 (1987). In arguing that he previously filed identical claims regarding the actions, he demonstrates that he was aware of the actions in 1994, the year in which he filed his most recent previous action regarding these claims. Compl. at 15; Forest Hills's Mot. to Dismiss Ex. 1. Because the plaintiff neither argues nor demonstrates that the defendant fraudulently concealed the basis of his cause of action, his equitable tolling argument fails. *Hohri,* 782 F.2d at 246.

**\*10** In sum, because "no reasonable person could disagree" that the plaintiff's claims accrued no later than 1994, and the plaintiff filed the instant complaint in 2002, the three-year statute of limitations bars the plaintiff's claims against defendant Forest Hills. *Firestone,* 76 F.3d at 1209. The court therefore grants defendant Forest Hills's motion to dismiss.

## IV. CONCLUSION

For all these reasons, the court denies the federal defendants' motion to strike and grants all of the defendants' renewed motions to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August, 2003.

### *ORDER*

### DENYING THE FEDERAL DEFENDANTS' MOTION TO STRIKE; GRANTING THE DEFENDANTS' RENEWED MOTIONS TO DISMISS

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of August, 2003, it is

**ORDERED** that the federal defendants' motion [27] to strike is **DENIED;** and it is

**FURTHER ORDERED** that the federal defendants' renewed motion [50] to dismiss is **GRANTED;** and it is

**ORDERED** that the plaintiff's motion [34] for a hearing is **DENIED;** and it is

**FURTHER ORDERED** that defendant Pennsylvania's renewed motion [48] to dismiss is **GRANTED;** and it is

**ORDERED** that defendant Forest Hills's renewed motion [24] to dismiss is **GRANTED;** and it is

**FURTHER ORDERED** that defendant Pittsburgh's renewed motion [28] to dismiss is **GRANTED;** and it is

**ORDERED** that defendant Glenn's renewed motion [33] to dismiss is **GRANTED.**

**SO ORDERED.**

D.D.C.,2003.
Mikkilineni v. Com. of Pennsylvania
Not Reported in F.Supp.2d, 2003 WL 21854754 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

Westlaw.

Slip Copy
Slip Copy, 2008 WL 1862298 (D.D.C.)
(Cite as: 2008 WL 1862298 (D.D.C.))

Greater Yellowstone Coalition v. Kempthorne
D.D.C.,2008.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
GREATER YELLOWSTONE COALITION, et al.,
Plaintiffs,
v.
Dirk KEMPTHORNE, et al., Defendants.
National Parks Conservation Association, Plaintiff,
v.
United States Department of Interior; National Park
Service, Defendants.
Civil Action Nos. 07-2111(EGS), 07-2112(EGS).

April 24, 2008.

David S. Baron, Earthjustice, Washington, DC,
Douglas L. Honnold, Sean M. Helle, Earthjustice,
Bozeman, MT, for Plaintiffs.
Barry Alan Weiner, Guillermo A. Montero, Luther
L. Hajek, U.S. Department of Justice, Washington,
DC, for Defendants.
William P. Horn, Birch, Horton, Bittner and
Cherot, Washington, DC, for Movants.

*MEMORANDUM OPINION*

EMMET G. SULLIVAN, District Judge.
*1 Litigation concerning the use of snowmobiles in
Yellowstone and other national parks has been on-
going in this Court in various forms since 1997.
The instant cases represent the latest in a series of
challenges to the regulations promulgated by the
National Park Service ("NPS") concerning winter
activities in the National Parks. The regulations
currently at issue propose new restrictions on recre-
ational snowmobiling in Yellowstone and Grand
Teton National Parks and the John D. Rockefeller
Jr. Memorial Parkway (collectively "the parks").
Specifically, the new Winter Use Plan promulgated
by Defendants allows 540 recreational snowmo-
biles to enter Yellowstone National Park every day.
Plaintiffs allege that this number is so high as to

render the plan arbitrary and capricious in violation
of the Administrative Procedure Act ("APA") and
procedurally flawed in violation of the National En-
vironmental Protection Act ("NEPA").

Pending before the Court is Defendants' Motion to
Transfer this case to the District of Wyoming where
similar litigation has also been filed. Upon consid-
eration of the Motion, the responses and replies
thereto, the applicable law and the entire record of
this long-running litigation, the Court **DENIES** De-
fendants' Motion. Also pending before the Court is
the International Snowmobile Manufacturers Asso-
ciation's Motion to Intervene as Defendants and to
assert cross-claims. For the reasons stated herein,
the Motion to Intervene is **GRANTED IN PART
AND DENIED IN PART.**

**I. BACKGROUND**

**A. History of Snowmobiles Litigation**

This Court's involvement in the ongoing series of
cases regarding Yellowstone's winter management
began in 1997 and has continued nearly without
pause to the present day. *See Fund for Animals v.
Norton,* 323 F.Supp.2d 7 (D.D.C.2004)("*FFA II*");
*Fund for Animals v. Norton,* 294 F.Supp.2d 92
(D.D.C.2003)("*FFA I*"); *Fund for Animals v. Bab-
bitt,* 97-cv-1126 (EGS) (filed May 20, 1997). Over
the years, environmental and recreation groups
have challenged the Park Service's restrictions on
the use of snowmobiles in the parks, with the more
recent controversies growing out of a year 2000 Re-
cord of Decision which found that the use of snow-
mobiles at present levels so harmed the integrity of
the parks' resources and values that it violated the
NPS Organic Act. *See Record of Decision,* Winter
Use Plans for the Yellowstone and Grand Teton
National Parks and John D. Rockefeller Jr., Me-
morial Parkway ("2000 ROD"), 65 Fed.Reg.
80,908, 80,916 (Dec. 22, 2000). In light of this
finding, in 2001, NPS published a Final Rule call-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                              Page 2
Slip Copy, 2008 WL 1862298 (D.D.C.)
(Cite as: 2008 WL 1862298 (D.D.C.))

ing for the eventual phaseout of personal snowmobiles in the parks, and instead recommended continued winter access through the use of a snowcoach mass transit system. *FFA I,* 294 F.Supp.2d at 100. The "phase-out rule," promulgated by the Clinton administration, was published the day after President George W. Bush took office, and was immediately stayed pending a review of the Rule by the new administration. *Id.* In response to litigation brought by snowmobiling interest groups, NPS prepared a Supplemental EIS ("SEIS") in 2003. The SEIS proposed a dramatic change of course. In place of the planned phase-out, NPS set a new limit of 950 snowmobiles per day in Yellowstone. *Id.* at 101. Following two lawsuits in this Court and one in the District of Wyoming, NPS put into effect a "Temporary Winter Use Plan" which allowed a daily limit of 720 snowmobiles, subject to "best available technology" standards and some commercial guide requirements. This temporary plan was to be in effect for three winter seasons, from 2004 through 2007, and then replaced with a long-term winter use plan in 2007/2008. It is that long-term plan which is the subject of the instant case.

**B. The Instant Suit**

\*2 On September 24, 2007, NPS published its Winter Use Plans Final Environmental Impact Statement ("FEIS"). The complete plan was published in a November 20, 2007 Record of Decision ("2007 ROD"). The 2007 ROD claims to address "this Court's various concerns regarding the winter use 2003 Supplemental EIS" and allows 540 recreational snowmobiles per day, subject to "best available technology standards," commercial guiding, and a requirement that all snowmobilers travel in groups of eleven or less. 2007 ROD, p. 3, 8, 13-15. On November 20 and 21, 2007, two lawsuits were filed in this Court challenging the FEIS and ROD. The Greater Yellowstone Coalition Plaintiffs were the first to file suit and consist of conservation organizations that "take an active interest in maintaining the integrity of the National Park System."This group includes the Sierra Club, the Winter Wild-

lands Alliance, the Wilderness Society and the Natural Resources Defense Counsel (collectively "GYC"). GYC Compl. ¶ 7. The second suit was brought by plaintiff National Parks Conservation Association ("NPCA"), the largest national organization in the United States dedicated to the protection and enhancement of the National Park System. NPCA Compl. ¶ 8. Both suits allege that the FEIS and 2007 ROD in this case failed to comply with the National Environmental Protection Act ("NEPA") and the Administrative Procedure Act ("APA"). On December 18, 2007, NCPA amended its complaint to include a challenge to the 2007 Final Rule, which was published on December 13, 2007. In addition to NEPA and the APA, NPCA contends that the 2007 Final Rule violates the National Park Service Organic Act, and governing Executive Orders and NPS Regulations. The GYC plaintiffs likewise amended their compliant on January 11, 2008 to also challenge the Final Rule bringing similar claims. The cases were consolidated by Order of this Court on March 19, 2008.[FN1]

> FN1. The Court's consolidation Order indicated that any later filed Motion to Transfer would be resolved separately for each Plaintiff. The Court has considered the separate responses of each Plaintiff along with the Defendants' separately filed replies. However, as explained herein, the Court finds that Defendants have failed to meet their burden for reasons that apply equally to each Plaintiff. Accordingly, in the interest of judicial economy, and because Defendants' burden is the same in both cases, the Court resolves this motion in a single opinion.

Defendants are the National Park Service, Dirk Kempthorne, in his official capacity as the Secretary of the Interior, Mary Bomar in her official capacity as Director of the National Park Service and Mike Snyder in his official capacity as Director of the Intermountain Region of the U.S. National Park Service (collectively "NPS").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                           Page 3
Slip Copy, 2008 WL 1862298 (D.D.C.)
**(Cite as: 2008 WL 1862298 (D.D.C.))**

## C. The Wyoming Litigation

On December 13, 2007, the State of Wyoming filed a petition for review of agency action challenging the FEIS, 2007 ROD, and 2007 Final Rule, alleging that those actions violate NEPA, the APA, the Organic Act, the Yellowstone National Park Act, and the United States Constitution insofar as they (1) impose daily limits on snowmobile access to Yellowstone National Park ("Yellowstone"); (2) impose a commercial guide requirement; and (3) impose a new management scheme for Sylvan Pass. Defs.' Mot. at 9. On January 2, 2008, the Board of County Commissioners of the County of Park filed a nearly identical petition. *Id.* The two Wyoming Cases were consolidated by Order dated February 19, 2008. *Id.* On February 22, 2008, the International Snowmobile Manufacturers Association, the American Council of Snowmobile Associations, the Blue Ribbon Coalition, and Terri Manning (collectively "ISMA") filed a motion to intervene as plaintiffs in the consolidated Wyoming Cases, challenging the 2007 Final Rule's reduced limit of 540 snowmobiles per day in Yellowstone and the commercial guide requirement. *Id.* ISMA's motion was granted the same day.

## II. DISCUSSION

\*3 On March 25, 2008, Defendants filed a Motion to Transfer this case to the District of Wyoming. Defendants contend that transfer is warranted because of the risk of inconsistent verdicts between the two Federal Courts presently entertaining challenges to the 2007 Final Rule and supporting documentation. Defendants also argue that the "localized nature" of this controversy and the public interest in judicial economy warrant transfer. Plaintiffs counter that substantial deference is due to their choice of forum in this Court, that this Court's history with this litigation counsels in favor of denying transfer, that this issue is of national significance, and that the principle of comity requires any similar cases to be transferred to this Court because the first challenge relating to the 2007 Final

Rule was filed here.

Under 28 U.S.C. § 1404(a), district courts in their discretion may transfer a case to any other district where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Under this statute, the moving party "bears the burden" of establishing that transfer is appropriate. *Flynn v. Veazey Constr. Corp.,* 310 F.Supp.2d 186, 193 (D.D.C.2004). *See Sec. and Exch. Comm. v. Savoy Ind., Inc. .,* 587 F.2d 1149, 1154 (D.C.Cir.1978) (district court's ruling denying motion to transfer "was effectively a ruling that [appellant] had failed to shoulder his burden").

A party dissatisfied with the plaintiffs' chosen forum has the burden of demonstrating the appropriateness of transfer. *FFA II,* 352 F.Supp.2d at 1-2. If venue is proper, as it is here, transfer elsewhere under Section 1404(a) must be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute. *Savoy Ind.,* 587 F.2d at 1154 (internal quotations omitted). Ultimately, in all but those cases in which the plaintiffs' chosen forum has " 'no meaningful ties to the controversy and no particular interest in the parties or subject matter[,]' " courts "must afford substantial deference to the plaintiffs' choice of forum." *Greater Yellowstone Coalition v. Bosworth,* 180 F.Supp.2d 124, 128 (D.D.C.2001) (quoting *Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142, 144 (D.D.C.1979)); see also *FFA II,* 352 F.Supp.2d at 2; *Wilderness Soc'y v. Babbitt,* 104 F.Supp.2d 10, 12 (D.D.C.2000) ("Absent specific facts that would cause a district court to question plaintiffs' choice of forum, plaintiffs' choice is afforded substantial deference."). In exercising their broad discretion, courts are to "balance case-specific factors which include the private interests of the parties and public interests such as efficiency and fairness." *Greater Yellowstone Coalition,* 180 F.Supp.2d at 127.

## A. Private Interest Factors

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 4
Slip Copy, 2008 WL 1862298 (D.D.C.)
(Cite as: 2008 WL 1862298 (D.D.C.))

The private-interest factors include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *See Greater Yellowstone Coalition*, 180 F.Supp.2d at 127 (citing *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C.1996) (citations omitted)).

**\*4** Because this is an action for review of an administrative record and live testimony is unlikely, the Court need not consider the fifth and sixth factors. *Id.* Of the remaining four factors, only the Defendants' choice of forum arguably weighs in favor of transfer. Defendants primarily argue that their choice of forum will avoid the risk of inconsistent verdicts between this Court and the District of Wyoming. However, that result is far from certain. Defendants have informed the Court that they have filed a contingent Motion to Transfer the Wyoming litigation to this Court that will be ripe for adjudication on April 25, 2008. Defendants apparently fear that their Motion will be denied and they will again face the risk of inconsistent judgments should both cases ultimately be decided on the merits in their respective venues. Defendants ask this Court to override Plaintiffs' choice of forum based on mere speculation about the likelihood of an adverse ruling on their Motion to Transfer in the Wyoming Court. This Court will not engage in such speculation about the decisions of another Federal Court. Furthermore, it is speculative at this early stage whether the risk of inconsistent judgments is a legitimate concern. While this case certainly has a history of conflicting orders, the challenges presented in the instant suits are not identical, nor are they guaranteed to produce conflicting outcomes.

The remaining private interest factors counsel in favor of denying transfer. As to the convenience of

the parties, Plaintiff NPCA has its headquarters in Washington, DC and the litigation is being directed by its General Counsel, who is located in the District of Columbia. The NCPA's outside counsel is also located in the District of Columbia. Of the GYC Plaintiffs, the Wilderness Society, the Sierra Club, and the Natural Resources Defense Counsel each have offices here. The Winter Wildlands Alliance is based in Boise, Idaho, and the Greater Yellowstone Coalition is headquartered in Bozeman, Montana, with two staff members based in a Wyoming Field Office and six staff members working out of Idaho Falls, Idaho. Both the Federal Defendants' headquarters and their counsel in the Department of Justice are also based in Washington, DC. Furthermore, proposed intervenors' counsel, the firm of Birch, Horton, Bittner and Cherot, an Alaska-based firm, has its only other office in the District of Columbia.

Defendants argue that the Wyoming District Court is not inconvenient because several of the plaintiffs have field offices in or around Yellowstone. Defendant contends that "none of the plaintiffs could claim prejudice as a result of being made to litigate in Wyoming" because "NCPA has field offices in both Jackson Hole, Wyoming, and Livingston, Montana ... The Wilderness Society also has a field office ... in Bozeman, Montana ... and the Greater Yellowstone Coalition is headquartered in Bozeman."Def.'s Mot. at 17. This argument fails to appreciate the magnitude of the Western landscape. The Wyoming District Court in Cheyenne where the related litigation is pending is approximately 600 miles from both Bozeman and Livingston and 432 miles from Jackson Hole. Defendants cannot reasonably maintain that the presence of field offices an average of 500 miles from the Court is more convenient than a main office approximately 2.5 miles away, as is the case for both the Wilderness Society and the NCPA Plaintiffs. Accordingly, the Court finds that the convenience of the parties clearly weighs in favor of denying transfer. Defendants have failed to articulate any prejudice that will befall them by being forced to litigate in this Dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 1862298 (D.D.C.)
**(Cite as: 2008 WL 1862298 (D.D.C.))**

trict, the home to both Defendants themselves and their counsel.

**\*5** Finally, the Court also finds that the claim did not "arise elsewhere," but rather arose in this District, where the Rule was drafted and published. NPCA Plaintiffs aver significant involvement on the part of high-level Executive Branch officials, up to and including those in the White House. NPCA Opp'n at 6. The Final Rule was signed by the Assistant Secretary of the Interior for Fish and Wildlife and Parks, who is based in Washington, D.C. The voluminous Administrative Record is located in the District of Columbia. While it is undoubtedly the case that NPS officials located in and around Yellowstone provided input into the formulation of the FEIS, the 2007 ROD, and the 2007 Final Rule, this controversy stems from the formulation of national policy on an issue of national significance. *See Wilderness Soc'y,* 104 F.Supp.2d at 14.

**B. Public Interest Factors**

The Court has determined that the private interest factors weigh heavily in favor of denying transfer. However, the Court must also analyze whether the public-interest factors also support denying Defendants' motion. The Court determines that they do.

The public-interest considerations include: (1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Greater Yellowstone Coalition,* 180 F.Supp.2d. At 128.

First, as detailed above, this Court has a long history with the facts and law surrounding this case and the prior litigation involving winter use at Yellowstone National Park. This Court has rejected previous attempts to transfer this litigation out of this district and finds that Defendants have failed to produce any new or compelling arguments to per-

suade the Court that in spite of this Court's experience with this litigation, transfer is appropriate now.

As for the pendency of related actions, the Court finds it is in the interest of justice that the principle of comity is upheld. Plaintiffs' complaints in this Court were filed on November 20 and 21, 2007. The Wyoming plaintiffs filed their complaint on December 13, 2007. Under the so-called "first-tofile rule," the first court in which jurisdiction attaches has priority to consider the case. This rule has been invoked by both the Tenth and D.C. Circuits. *See Washington Metro. Area Transit Auth. v. Ragarose,* 617 F.2d 828, 830 (D.C.Cir.1980) ("For more than three decades the rule in this circuit has been that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first....'"); *Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir.1965) ("The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."). Defendants do not object to the consolidation of these related actions before a single Court and accordingly have filed a contingent motion in the District Court in Wyoming to transfer the related litigation to this forum. This Court has no reason to believe that the District of Wyoming would not observe the same principles of comity upheld in both the D.C. and Tenth Circuits and grant Defendants' motion to transfer the related litigation here. Although Defendants' concerns about the prospect of conflicting orders are understandable, it appears to this Court that such a conflict is unlikely.

**\*6** The Court rejects Defendants' argument that Plaintiffs' initial complaints challenging the 2007 ROD and FEIS were somehow deficient such that they should not be accorded first-filing status. Defendants chose not to challenge the sufficiency of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs' complaints and therefore the Court considers any such argument waived. Furthermore, as a general matter, Defendants are incorrect as a matter of law. *See Ouachita Watch League v. Jacobs,* 463 F.3d 1163, 1173 (11th Cir.2006)("It is well settled that a final EIS or the record of decision issued thereon constitute final agency action.") (citing *SW Williamson County Cmty Ass'n, Inc. v. Slater,* 173 F.3d 1033, 1036 (6th Cir.1999)). Defendants chose not to argue that the ROD or FEIS in this case might constitute an exception to this rule and therefore the Court will not entertain that argument now.

As for the respective calendars of each court, Defendants have not argued that the District of Wyoming has a less congested docket than this Court. Accordingly, this factor does not weigh in favor of transfer.

Finally, Defendants argue that this case is a "localized controversy" the effects of which will be "more acutely felt in the state of Wyoming" and therefore it should be decided "within their view." Defs.' Mot. at 15. While the Court does not discount the importance of these issues to the people of Wyoming, the Court finds, as it has done previously, that the management of Yellowstone National Park and more broadly, the interpretation of various federal mandates governing the NPS, present questions of national significance. *See Greater Yellowstone Coalition,* 180 F.Supp.2d at 128-29 (noting the "national significance" of a case involving the interpretation of federal statutes, and no state laws, affecting the management of the Yellowstone buffalo); *Wilderness Soc'y,* 104 F.Supp.2d at 13 (concluding that the Department of the Interior's decision to begin oil and gas leasing on Alaska's National Petroleum Reserve was a "national policy decision" concerning a "national resource" not "an isolated, local environmental issue"). Yellowstone National Park is truly a national icon. The first case challenging the winter use plan for the parks was litigated in this District precisely because conserving the scenery, natural objects and wildlife of that park is a matter of great national

importance. *See FFA I,* 294 F.Supp.2d at 102-03. With respect to both the draft EIS and the proposed rule, comments came from every state in the United States and 14 foreign countries. GYC Opp'n at 17. More than 70% of visitors to Yellowstone and Grand Teton National Parks are from states other than Wyoming, Montana and Idaho, the States in which those Parks are located in whole or in part. *See* NPCA Opp'n, Ex. A.

This case is distinguishable from *Trout Unlimited v. U.S. Dep'y of Agric.,* 944 F.Supp. 13 (D.D.C.1996). In that case, this Court granted defendant's motion to transfer because no plaintiff resided in the District of Columbia, the challenged decision was inherently local and the controversy involved the potential interpretation of Colorado law. *Id.* at 18-19.*Hawksbill Sea Turtle v. FEMA,* 939 F.Supp. 1 (D.D.C.1996) is also unavailing. There, all the plaintiffs and their witnesses lived in the Virgin Islands and the environmental laws in question were alleged to have been violated there. Moreover, the prior action in the District Court for the Virgin Islands "created three volumes of trial transcript, and a large volume of documents and exhibits."*Id.* at 3. This Court found that "no other court is more familiar with the factual background and legal issues of this case than the District Court for the Virgin Islands, and there is little doubt that transfer of this case will promote significant economy of judicial resources."*Id* . at 4.

*7 As in *Wilderness Society v. Babbitt,* Plaintiffs' ties to the District of Columbia, the involvement of multiple Washington-based officials in the challenged action, and the national scope of the environmental issues at stake defeat Defendants' claim that the connection between Plaintiffs, the controversy and the forum is attenuated. The management of the National Parks and the interpretation of federal environmental statutes are nationwide concerns. Accordingly, Plaintiffs' choice of forum is entitled to substantial deference. *Wilderness Soc'y,* 104 F.Supp.2d at 14. Defendants have failed to meet their burden of demonstrating the appropriate-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 1862298 (D.D.C.)
**(Cite as: 2008 WL 1862298 (D.D.C.))**

Page 7

ness of transfer in this case, and accordingly the Plaintiffs' choice of forum must be respected.

## III. MOTION TO INTERVENE

Also pending before the Court is ISMA's Motion to Intervene as defendants and to assert cross-claims against the Federal Defendants in this case. Applicant Intervenors are organizations dedicated to the promotion of snowmobiling and the snowmobiling industry and the promotion of snowmobiling as part of responsible conservation and management policies. Furthermore, these organizations' members enjoy snowmobiling in Yellowstone National Park.[FN2] ISMA's Mot. at 3. Applicant Intervenors contend they "have significant interests in this litigation that are not adequately represented by the current parties."*Id.*

> FN2. As previously noted, Applicant Intervenors include the International Snowmobile Manufacturers Association, the American Council of Snowmobile Associations, the Blue Ribbon Coalition, and Terri Manning (collectively "ISMA").

ISMA argues that it is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). Alternatively, ISMA moves the Court for permissive intervention under Rule 24(b).

Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who:

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a).

As a threshold matter, an applicant for intervention

as of right must show that it has standing under Article III of the U.S. Constitution to participate in the litigation as a party. *See Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C.Cir.1998). There are three additional prerequisites to intervention as of right: (1) there must be an "adequate interest"; (2) there must be a "possible impairment of that interest"; and (3) there must be a "lack of adequate representation of that interest by existing parties."*Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C.Cir.1986). ISMA's Mot. at 17.

ISMA's Motion to Intervene as a defendant was timely filed and is unopposed. *See* Def.'s Opp'n at 3, n. 2; *see generally* GYC's Opp'n, NCPA's Opp'n. The Court agrees that ISMA has Article III standing, and has substantial interests in the case that are subject to impairment that would not be adequately represented by the parties. Accordingly, ISMA's motion is **GRANTED** insofar as ISMA seeks to intervene as a defendant against Plaintiffs' claims.

*8 However, the Court will not allow ISMA's cross-claims against the Federal Defendants to proceed in this case at this time. ISMA has filed identical claims in the District of Wyoming litigation against the same defendants. Under the first-to-file rule discussed above, this Court must yield to the Wyoming Court's jurisdiction over ISMA's claims. Should ISMA decide to voluntarily withdraw its affirmative claims against the Federal Defendants in Wyoming, or if that case is ultimately transferred to this Court, they are free to move the Court to reconsider its decision.

## IV. CONCLUSION

For the reasons stated herein, Defendants have failed to persuade the Court that transfer of this case to the District of Wyoming is in the interests of justice. Accordingly, it is hereby **ORDERED** that Defendants' Motion to Transfer is **DENIED.**It is **FURTHER ORDERED** that ISMA's Motion to Intervene is **GRANTED IN PART AND DENIED IN PART.**ISMA may intervene as a defendant, but

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 1862298 (D.D.C.)
**(Cite as: 2008 WL 1862298 (D.D.C.))**

may not assert affirmative cross-claims at this time.
An appropriate Order accompanies this Memor-
andum Opinion.

D.D.C.,2008.
Greater Yellowstone Coalition v. Kempthorne
Slip Copy, 2008 WL 1862298 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.